Hillsborough,
No. 5182.

WILLIAM COLTIN & CO.

*v.*

MANCHESTER SAVINGS BANK.

Argued November 6, 1963.
Decided January 31, 1964.

*Stein, Cleaveland & Rudman* (*Mr. Warren B. Rudman* orally), for the plaintiff.

*McLane, Carleton, Graf, Greene & Brown* and *Charles A. De Grandpre* (*Mr. De Grandpre* orally), for the defendant.

LAMPRON, J. The transferred question is "whether or not a foreign, incorporated, real estate broker which has not complied with RSA Chapter 331-A relating to the licensing of real estate brokers and salesmen may maintain an action in the New Hampshire courts to recover a commission on an alleged brokerage agreement made in New Hampshire concerning property located in New Hampshire."

The parties agree to the following facts: "The plaintiff in its writ alleges that on May 28, 1962 at Manchester, New Hampshire, the defendant agreed to pay to plaintiff a brokerage commission for the procurement of a ready, willing and able buyer for the defendant's building . . . at 809-815 Elm Street, Manchester, New Hampshire, at a specified price, and upon certain terms. The plaintiff further alleges that it did procure a ready, willing and able customer at the price and upon the terms authorized by the defendant for this building. The building was never sold to this customer, who was a Massachusetts resident, and it was later sold to another party after the commencement of this suit."

RSA ch. 331-A (supp) provides that after March 1, 1960 "it shall be unlawful for any person to engage in . . . the business or acting in the capacity, of a real estate broker or real estate salesman within this state without first obtaining a license as such broker or salesman" (*s.* 3). The term "person" shall include corporations, foreign and domestic (*s.* 1 (d)). Applications for licenses shall be made to the Commissioner of Insurance, on forms prescribed by him, stating the state of incorporation and principal place of business of a corporate applicant, and accompanied by affidavits of three residents of

New Hampshire who own real estate here stating that the members and officers of the applicant are persons of good repute, trustworthy and entitled to public confidence (*s*. 4). A fee of $15 for an original and a fee of $10 for each annual renewal of a broker's license shall be charged and collected by the Commissioner of Insurance (*s*. 5). The Commissioner shall have full power to revoke or suspend such licenses for cause subject to the right of review by a special board (*s*. 7). Any person acting as a broker or salesman without a current license shall be guilty of a misdemeanor and punishable by a fine of not more than $100 and upon conviction of a second or subsequent violation the fine shall be not more than $500 (*s*. 8).

If all the relevant factors indicate the purpose of such a statute is the collection of revenue, the express statutory penalties are usually held to be exclusive and contracts made without a, license are not thereby made unenforceable. If on the other hand the statute is an exercise of the police power and is designed to protect the public against fraud and incompetence, the lack of license will not only subject a violator to the express statutory penalties but he will be unable to enforce his bargain and collect his commission. *Albertson* v. *Shenton*, 78 N. H. 216, 217, 218; *Benham* v. *Heyde*, 122 Colo. 233; *Bickley* v. *Van Antwerp Realty Corporation*, 122 So. 2d 275, 276; *Harris* v. *Kent House Corporation*, 127 F. Supp. 44 (D. Conn. 1954); 6 A Corbin, Contracts, *s*. 1512. In the latter instance the purpose of the statute is held to prohibit the transaction upon which the right of action is sought to be based. The contract being thus prohibited, it is illegal and cannot be the foundation of a right to recover. *Albertson* v. *Shenton, supra*; Restatement, Contracts, *s*. 580, (2) a, d.

The touchstone as to whether RSA ch. 331-A (supp) is a revenue measure or a police power regulation is the intent of the Legislature. *Bolduc* v. *Richards*, 101 N. H. 303, 304. This is ascertained by a consideration of all the competent evidence available. *Colby* v. *Broderick*, 96 N. H. 316, 318. When introduced, the bill which resulted in this statute was referred to the Committee on Executive Departments and Administration and was passed after a favorable report by this committee. The minutes of a hearing held on it by this committee clearly indicate that the purpose of its sponsor and of the many witnesses

who appeared in its support was the protection of the public from unscrupulous brokers and salesmen.

The requirements of the statute that affidavits of three residents of this state attesting that the applicant is of good repute, trustworthy and entitled to public confidence points to such a purpose. So does the provision providing for the suspension or revocation of licenses by the Commissioner of Insurance. Considering the statute as a whole, we are of the opinion that its provision that "it shall be unlawful for any person to engage in . . . the business or acting in the capacity of a real estate broker . . . within this state without first obtaining a license" was not only intended to subject the violator to the penalty which it provides but also to prohibit an unlicensed person to enter into such transactions by making them void and unenforceable. *Albertson* v. *Shenton*, 78 N. H. 216, 218; see *Park* v. *Manchester*, 96 N. H. 331.

RSA ch. 331-A (supp) provides that a broker "shall mean any person who for a fee [or] . . . commission, negotiates or attempts to negotiate the . . . sale . . . of any real estate" (*s.*1 (b)). It also provides that the term "person shall mean . . . corporations . . . foreign and domestic." *S.* 1 (d). Section 2 specifically exempts divers persons from its operation. Isolated transactions by a foreign broker such as the plaintiff do not come within these exemptions. Section 6 specifically provides for the licensing of a foreign broker if the state of his residence offers the same privilege. See Mass. Ann. Laws, ch. 112, *s.* 87 W. W. We are therefore of the opinion that even if this was an isolated transaction (Annot. 169 A.L.R. 767, 783) by the plaintiff it could not "maintain an action in the New Hampshire courts to recover a commission on an alleged brokerage agreement made in New Hampshire concerning property located in New Hampshire." The answer to the transferred question is "No."

*Remanded.*

All concurred.