Hillsborough
No. 88-450

FINLAY COMMERCIAL REAL ESTATE, INC.

v.

JOHN F. PAINO & a.

April 11, 1990

*Law Offices of K.S. Williams-Hardy,* of Epping (*Kathryn Swain Williams* on the brief and orally), for the plaintiff.

*Boutin & Solomon P.A.,* of Londonderry (*Edmund J. Boutin* and *Fred J. Forman* on the brief, and *Mr. Boutin* orally), for the defendant.

BATCHELDER, J. The appeal in this case is from an order of the Superior Court (*Dalianis,* J.) granting the defendants' motion for summary judgment in an action by plaintiff to recover a real estate brokerage commission. The court ruled, "Finlay is a licensed New Hampshire Real Estate Broker and as such must have a written listing agreement for sale in order to recover a commission and maintain a cause of action." Because we differ from the trial court in our view of the consequences of the lack of a written listing agreement, we reverse and remand for further proceedings consistent with this opinion.

This case was foreseen in a recent opinion in *Suburban Realty, Inc. v. Albin,* 131 N.H. 689, 693, 559 A.2d 1332, 1335 (1989), where we stated: "[P]laintiff does not contend that even if validly promulgated, the regulation [requiring written listing agreements] should not operate to bar enforcement of an oral contract. We therefore express no opinion on the merits of such a claim." Because the case we did not decide but only referred to in *Albin* is now before us, we must examine the setting in which the administrative rule in question, N.H. ADMIN. RULE, Rea 404.05, has its place, and determine its significance in the light of settled common law dealing with oral real estate listings.

The rule referred to in the summary disposition order of the trial court appears as a part of the New Hampshire Code of Administrative Rules, covering listing agreements.

> *"Listing Agreements.* Each contract providing for the listing of real estate for sale, lease, exchange or rent shall be in writing and contain the following information:
>
> (a) The date of the execution of the contract;
>
> (b) Address, location or description of the property;
>
> (c) The names, addresses and signatures of all parties;
>
> (d) The professional fee stated as a dollar amount, percentage or other specific consideration to be paid to the broker;

(e) A provision under which the contract expires on a specific date unless expressly extended for a specific term in writing and signed by the parties."

N.H. ADMIN. RULES, Rea 404.05 (1982) (current version at N.H. ADMIN. RULES, Rea 404.05 (1987)).

In the case at hand, the plaintiff, Finlay Commercial Real Estate, Inc. (Finlay), negotiated with the defendants, John F. and Dolores M. Paino, general partners of Dolores Associates Limited Partnership, for a listing of the defendants' commercial real estate located at 182–186 Main Street, Nashua. In early June 1986, Finlay submitted to the defendants a marketing proposal containing the procedures and fees applicable to either a sale or a lease of the building in question. On June 13, 1986, the parties entered into a written "LISTING CONTRACT FOR LEASE." The contract was in substance a recognition by the defendants that Finlay had the exclusive right to lease the property in question. The agreement contained provisions concerning the per square foot rental of the real estate space and the garage space, as well as providing for the percentage of rent to which Finlay would be entitled as a commission for procuring an appropriate tenant. The term of the listing was for the period of one year.

On August 12, 1986, Finlay wrote to the defendants seeking the opportunity to negotiate a listing of the property in question for sale. Nothing in the record indicates that the defendants accepted this proposal, nor does the record show factually that the parties' orally modified their written "LISTING CONTRACT FOR LEASE." Shortly thereafter, as Finlay alleges, it introduced the defendants to a prospective purchaser. A purchase and sale agreement was ultimately signed by both the purchaser and the defendants, although the agreement did not recognize Finlay as having played a role in producing the purchaser. In due course, Finlay sought a commission based upon the agreed purchase price of $3,300,000. The defendants refused to pay, basing their refusal on the fact that there was no written listing agreement for a sale. The plaintiff commenced suit in May of 1988 for the commission to which it claimed entitlement. Relying on Rule 404.05 of the Real Estate Commission, *see supra*, the defendants moved for summary judgment on September 12, 1988, which was granted by the court on October 20, 1988. This appeal followed.

Our first inquiry is to examine the stature and efficacy of Rule 404.05 in the contemporary business climate relating to real estate brokers and salespeople in the disposition of interests in real estate.

RSA chapter 331-A contains the statutory regulations of real estate brokers and salespeople, and creates the New Hampshire Real Estate Commission consisting of five members "whose duty shall be to administer this chapter." RSA 331-A:1-a. The primary focus of the statute is to provide a licensing procedure, whereby all persons who act in the capacity of real estate salespeople or brokers are regulated by the strictures of the licensing law. *See, e.g.*, RSA 331-A:3. Section 6-b of the statute establishes a code of conduct by describing at length (in twenty-one paragraphs) specific courses of conduct which in and of themselves constitute breaches or violations of the standards to which the legislature requires brokers and salespeople to be held. RSA 331-A:6-b. A violation may result in loss of the broker's or salesperson's license in an appropriate proceeding conducted by the board. *Id.* The statute, in section 4-b, also gives rule-making authority to the commission. RSA 331-A:4-b (1984 and Supp. 1989). The statutory authority to make rules refers to RSA chapter 541-A, the New Hampshire Administrative Procedure Act. *Id.* Section 4-b provides as follows:

> *"Rulemaking.* The commission shall adopt rules, under RSA 541-A, relative to:
>
> I. Conduct of licensed brokers and salesmen;
> II. Administration of examinations;
> III. Fees for examinations, continuing education courses, licenses, transcripts and dishonored checks;
> IV. Application forms for original and renewal licenses;
> V. Proof of applicant's good character;
> VI. Eligibility of persons who have failed a salesman or broker exam to be reexamined;
> VII. Form of license certificates and cards;
> VIII. Accreditation of programs of study in real estate, and the conduct of such programs;
> IX. A minimum of 3 hours of continuing education for license renewal;
> X. Procedure in commission proceedings;
> XI. Procedures for the conduct of hearings consistent with requirements of due process; and
> XII. The ethics code as required under RSA 331-A:1-d."

RSA 331-A:4-b (1984 and Supp. 1989).

■ Pursuant to this rulemaking authority, the commission adopted the rule which we consider today. It is apparent that the ills which the legislature sought to protect the public against were "'fraud, and incompetence' at the hands of 'unscrupulous brokers and salesmen.'" *Corkin v. Elger Corporation*, 106 N.H. 522, 523, 214 A.2d 740, 741 (1965) (quoting *Coltin Company v. Manchester Savings Bank*, 105 N.H. 254, 256–57, 197 A.2d 208, 210 (1964)); *Suburban Realty, Inc. v. Albin*, 131 N.H. at 692, 559 A.2d at 1334.

There is no question, as we pointed out in *Albin*, that a regulation requiring that real estate listing agreements be in writing is consistent with the purposes of the statute. *Albin, supra* at 693, 559 A.2d at 1335. However, the question which we confront is not whether a violation of the rule may result in disciplinary action by the commission pursuant to a complaint, which conceivably could result in the loss of a broker's or salesperson's license, but whether a violation of the writing requirement precludes a broker from being paid a commission for producing a buyer which the seller is willing to accept. In other words, does the rule in any way abrogate or dilute protection which has been long afforded by common law. We think not.

■ The standards set forth in RSA chapter 331-A meant to guide the Commission in promulgating the various rules required to effectuate its purpose are entirely directed at the internal policies and procedures necessary to maintain the integrity of the real estate business. In this regard, it appears that the legislature intended these rules to have no effect outside the ethical, licensing, and disciplinary confines of the business. Additional evidence can be found in RSA 331-A:1-c, entitled Powers and Duties, which requires the Commission to submit a report containing any recommendation for legislation. It logically follows that the legislature intended that the Commission, should it feel that the common law need be adjusted, recommend legislation to that end rather than promulgate a rule in the absence of the necessary standards to guide them in such a rulemaking endeavor.

The specific statute in question had been the subject of review in this court prior to our discussion in *Albin*. In *Hamel Real Estate, Inc. v. Shepard*, 121 N.H. 733, 433 A.2d 1320 (1981), the defendant argued in a workers' compensation case that RSA chapter 331-A establishes the relationship between broker and salesperson as that of employer-employee, as a matter of law. The court's response to this contention is instructive for our purposes in the case at hand.

"When the trial court addressed this argument, it determined that RSA ch. 331-A sets forth a licensing procedure only and does not purport to establish when an employer-employee relationship exists as a matter of law. We too are of the opinion that the defendant reads too much into RSA ch. 331-A. The statute is clearly a licensing statute and does not even remotely concern itself with matters touching upon workmen's compensation benefits. We find nothing in the language of RSA ch. 331-A that prohibits brokers and salesmen from entering into exclusive independent contractor's agreements. Moreover, the defendant asks us to hold that RSA ch. 331-A alters the well-established common-law test for determining when an employer-employee relationship exists. Absent clear statutory language to that effect, we will not do so."

*Id.* at 736, 433 A.2d at 1322 (citations omitted).

The analysis set forth in *Hamel Real Estate* is as applicable to the law of principal and agent as it is to the law of workers' compensation. When confronted with disparate results under a common law application, as distinguished from a statutory application, we consider first the elementary proposition of statutory construction, that "[w]here there is any doubt about their meaning or intent [statutes] are given the effect which makes the least rather than the most change in the common law." N. SINGER, 3 SUTHERLAND STATUTORY CONSTRUCTION § 61.01, at 77 (4th ed. rev. 1986). There can be no doubt but that an oral agency may be created which will bind the principal in a real estate transaction if the agent has performed and earned a commission. This is a view which was recognized by this court in *93 Clearing House, Inc. v. Khoury,* 120 N.H. 346, 348–49, 415 A.2d 671, 673 (1980):

"An agency relationship exists only when the seller gives the agent some manifestation that the agent may act on his behalf and the agent consents to do so. The manifestation and consent need not be written; in fact, it may be implied from the parties' conduct or other evidence of intent."

(Citations omitted.)

In adopting the position we take today, we are mindful that other jurisdictions have considered whether an administrative rule which requires written listing agreements bars recovery under an oral agreement. The Missouri Court of Appeals has held that, even

though the real estate commission has a regulation requiring all listing agreements to be in writing, there could be recovery of a commission. *Coldwell Bankers-Gordon Co. Realtors v. Roling,* 703 S.W.2d 572, 576 (Mo. App. 1986); *see also Hilton Head Isl. Realty, Inc. v. Skull Creek Club,* 287 S.C. 530, 538–39, 339 S.E.2d 890, 895 (S.C. App. 1986) (real estate commission regulation requiring written listing agreement did not bar broker's recovery of commission in absence of written contract, though better practice was to have written agreement). The court reasoned that the purpose of the regulation was to protect the public from fraud and incompetence and that where there was no evidence of fraud or misconduct, and where the loss to the broker outweighed the purpose of the statute, the broker should be paid. *Roling supra.* It is also of interest to note that in one jurisdiction which holds differently than we do today, a broker may recover under other writings indicating his authority. *Amato & Stella Assoc. v. Fla. North Investments,* 678 F. Supp. 445, 449 (D. Del. 1988). "[A] 'commission contract need not be written in advance; ... it can ... [even] be included as part of the landowner's acceptance of the prospective purchaser's proposition.'" *Id.* (citation omitted).

[6]    While the lack of a written listing agreement may be good cause for the board to take action against a license, it is not sufficient reason for the seller to get the benefit of a windfall. Accordingly, we hold that Rule 404.05 does not act as a bar to the collection of a commission when the criteria necessary to establish entitlement to a commission have been established. *93 Clearing House, Inc. v. Khoury,* 120 N.H. at 348–49, 415 A.2d at 673; *Williams v. Walker,* 95 N.H. 231, 234, 61 A.2d 522, 524 (1948).

> *Reversed and remanded for further proceedings consistent with this opinion.*

SOUTER, J., did not sit; the others concurred.