Hillsborough-northern judicial district
No. 2001-010

MINUTEMAN, LLC & a.

v.

MICROSOFT CORPORATION

Argued: February 7, 2002
Opinion Issued: April 19, 2002

*Wiggin & Nourie, P.A.*, of Manchester (*Richard B. McNamara* and *Mary Ann Dempsey* on the brief, and *Mr. McNamara* orally), for the plaintiffs.

*McLane, Graf, Raulerson & Middleton, P.A.*, of Manchester (*Bruce W. Felmly* and *Jennifer L. Parent* on the brief, and *Mr. Felmly* orally), and *Sullivan & Cromwell*, of New York, New York (*David B. Tulchin & a.* on the brief), for the defendant.

DALIANIS, J. The plaintiffs, Minuteman, LLC and Ronald H. Proulx, appeal an order of the Superior Court (*Lynn*, J.) dismissing their claim against the defendant, Microsoft Corporation, for allegedly violating New Hampshire's antitrust statute. RSA ch. 356 (1995). We affirm.

The relevant facts follow. Plaintiff Proulx purchased a "Millenia Max 65133" personal computer from J&B Diversified Associates in Manchester. The "Windows 98" operating system software was included with the purchase and was installed by the store. Plaintiff Minuteman, LLC owned a computer in which it had been using the "Windows 95" operating system. It purchased the "Windows 98" operating system on a CD-rom disk at Staples Office Supply store in Concord. As a precondition to using "Windows 98," the plaintiffs were required to enter into an "End User Licensing Agreement" (EULA) that had been included by the defendant with the software.

The plaintiffs brought suit against the defendant for damages under the State's antitrust statute. They seek treble damages under RSA 356:11, alleging that the defendant violated RSA chapter 356 by willfully acquiring monopoly power in the computer operating systems market in New Hampshire, and that it has used that power to set inflated prices for its "Windows 98" operating system. They allege that the defendant's actions

caused them to incur damages by having to pay unfair and unconscionable prices for "Windows 98" operating systems.

The defendant moved to dismiss the plaintiffs' action on the grounds that it failed to state a claim under RSA chapter 356. The defendant argued that the court should be guided by federal antitrust law and rule that the plaintiffs could not sue because they did not purchase the "Windows 98" operating system directly from the defendant. The superior court, relying upon *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), granted the defendant's motion. This appeal followed.

In reviewing a motion to dismiss on appeal, we ask whether "the plaintiff's allegations are reasonably susceptible of a construction that would permit recovery." *LaRoche, Adm'r v. Doe*, 134 N.H. 562, 564 (1991). For the purposes of review, we accept as true the plaintiffs' allegations of fact, and if the allegations constitute a basis for legal relief, we must hold that it was improper to grant the motion to dismiss. *Id.* However, we need not accept allegations in the writ that are merely conclusions of law. *Jay Edwards, Inc. v. Baker*, 130 N.H. 41, 45 (1987).

The plaintiffs first argue that the plain language of RSA 356:11 reveals that the legislature intended for them to recover under the antitrust statute.

> This court, of course, is the final arbiter of the legislature's intent as expressed in the words of the statute considered as a whole. We interpret legislative intent from the statute as written, and therefore, we will not consider what the legislature might have said or add words that the legislature did not include. Furthermore, we interpret statutes in the context of the overall statutory scheme and not in isolation.

*Appeal of Brady*, 145 N.H. 308, 310 (2000) (quotations and brackets omitted).

RSA 356:11 (1995) provides:

> I. Any person threatened with injury or damage to his business or property by reason of a violation of this chapter may institute an action or proceeding for injunctive relief when and under the same conditions and principles as injunctive relief is granted in other cases.
>
> II. Any person injured in his business or property by reason of a violation of this chapter may recover the actual damages sustained, and as determined by the court, the costs of the suit and reasonable attorney's fees. If the trier of facts finds that the violation is willful or flagrant, they [*sic*] may increase

damages to an amount not in excess of 3 times the actual damages sustained.

The plaintiffs assert that the use of the phrase "any person" evidences the legislature's intent to allow indirect purchasers to bring an antitrust claim. We have not had the opportunity to address the scope of this provision. RSA 356:14 provides, however, that "[i]n any action or prosecution under this chapter, the courts may be guided by interpretations of the United States' antitrust laws."

While judicial review of our antitrust law is sparse, both we and the United States District Court for the District of New Hampshire have looked to federal law when construing RSA chapter 356. *See Kenneth E. Curran, Inc. v. Auclair Transp., Inc.*, 128 N.H. 743, 748 (1986); *Donovan v. Digital Equipment Corp.*, 883 F. Supp. 775, 785 (D.N.H. 1994). By including RSA 356:14 in the statute, the legislature expressly encouraged a uniform construction with federal antitrust law. *See U.S. Healthcare, Inc. v. Healthsource, Inc.*, 986 F.2d 589, 599 (1st Cir. 1993). It has long been the practice of this court to examine the interpretation of federal legislation that is similar to our State's law. *See, e.g., In re 1994 Chevrolet Cavalier*, 142 N.H. 705, 709 (1998); *Petition of Dunlap*, 134 N.H. 533, 539 (1991). "[T]he use of language so closely paralleling that of [a] federal act suggests [to this court] a purpose to carry with it the interpretation given to the language of that Act." *Wiseman v. State*, 98 N.H. 393, 397 (1953).

The federal counterpart to RSA 356:11 is section 4 of the Clayton Act, 15 U.S.C. § 15(a) (1994). Like RSA 356:11, it provides that "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor ... and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee." Given the similarities between these two laws, we see no reason to ignore federal guidance in this area.

We, therefore, turn to the seminal case for our consideration, *Illinois Brick*. In *Illinois Brick*, the petitioners manufactured and distributed concrete blocks to masonry contractors, who then submitted bids to general contractors for the masonry portions of construction projects. *Illinois Brick*, 431 U.S. at 726. The respondents, the State of Illinois and other local government entities, were purchasers of buildings that were constructed partially out of concrete blocks manufactured by the petitioners and sold directly to the masonry contractors, thereby making the respondents indirect purchasers. *Id.* The respondents brought an antitrust action under section 4 of the Clayton Act for treble damages, alleging that the petitioners "engaged in a combination and conspiracy to

fix the prices of concrete block," and that the costs were passed on to them. *Id.* at 727.

The Supreme Court, relying upon its prior decision in *Hanover Shoe Inc. v. United Shoe Machinery Corp.*, 392 U.S. 481 (1968), rejected the respondents' claim, holding that the direct purchaser, "and not others in the chain of manufacture or distribution, is the party injured in his business or property within the meaning" of section 4 of the Clayton Act. *Illinois Brick*, 431 U.S. at 729 (quotation omitted). In *Hanover Shoe*, the Court had held that a defendant was generally precluded from asserting as a defense to an antitrust action that the direct purchaser has passed on the overcharge to an indirect purchaser and, therefore, suffered no damages. *See Hanover Shoe*, 392 U.S. at 494. Thus, the Court, in *Hanover Shoe*, held that "except in limited circumstances, a direct purchaser suing for treble damages under § 4 of the Clayton Act is injured within the meaning of § 4 by the full amount of the overcharge paid by it and that the antitrust defendant is not permitted to introduce evidence that indirect purchasers were in fact injured by the illegal overcharge." *Illinois Brick*, 431 U.S. at 724-25.

In support of its decision in *Illinois Brick*, the Court stated:

> Permitting the use of pass-on theories under § 4 essentially would transform treble-damages actions into massive efforts to apportion the recovery among all potential plaintiffs that could have absorbed part of the overcharge – from direct purchasers to middlemen to ultimate consumers. However appealing this attempt to allocate the overcharge might seem in theory, it would add whole new dimensions of complexity to treble-damages suits and seriously undermine their effectiveness.

*Id.* at 737. Of further concern to the Court was that allowing plaintiffs to pursue antitrust claims based upon pass-on theories would create the danger of subjecting defendants to multiple liability and result in multiple recoveries. *See id.* at 730; *see also Kansas v. Utilicorp United Inc.*, 497 U.S. 199, 212 (1990) (*Illinois Brick* rule serves to eliminate multiple recoveries.).

Contrary to the plaintiffs' position, the Court's decision in *Illinois Brick* was not based upon the construction of the phrase "any person." Rather, as the trial court correctly explained:

> [T]he distinction between direct and indirect purchasers does not inhere in the any person language the plaintiffs cite, but rather in the language threatened with injury or damage to his business or property. Simply put, because plaintiffs are indirect

> purchasers, they face no threat of suffering an antitrust injury within the meaning of the statute.

(Citation and quotations omitted.)

In the wake of *Illinois Brick*, many States have enacted legislation that expressly allows indirect purchasers to bring antitrust actions. *See California v. ARC America Corp.*, 490 U.S. 93, 98 (1989). In *ARC America*, the Court held that *Illinois Brick* did not preempt such legislation. *See id.* at 105-06. Despite the Court's ruling in *ARC America*, however, "many state legislatures and courts have adopted *Illinois Brick's* general prohibition against antitrust suits by indirect purchasers." *In re Terazosin Hydrochloride Antitrust Litigation*, 160 F. Supp. 2d 1365, 1372 (S.D. Fla. 2001).

The plaintiffs argue that we should not follow *Illinois Brick* because it is illogical and the dangers noted therein are outdated. While the reasoning underlying *Illinois Brick* is open to criticism, we find it persuasive. "The *Illinois Brick* rule permitting only direct purchasers to sue for antitrust injury reduces the dimensions of complexity that would otherwise curtail the effectiveness of antitrust suits, and encourages vigorous private enforcement by enhancing direct purchasers' incentive to bring antitrust suits." *Free v. Abbott Laboratories, Inc.*, 176 F.3d 298, 300 (5th Cir. 1999) (citation and quotations omitted).

> The focus of [indirect purchaser] suits would shift from the amount of increased prices caused by [the] defendants' anticompetitive conduct (a relatively straightforward inquiry) to the allocation of damages among parties in the line of distribution to ultimate consumers. Litigation would be prolonged, would become far more complex factually and strategically, and would benefit lawyers and determined defendants while reducing recoveries for plaintiffs.

*Id.* at 301. The dangers inherent in indirect purchaser lawsuits are no different now than the dangers inherent when *Illinois Brick* was decided.

■ We acknowledge, as did the *Illinois Brick* majority, that prohibiting antitrust lawsuits by indirect purchasers "denies recovery to those indirect purchasers who may have been actually injured by antitrust violations." *Illinois Brick*, 431 U.S. at 746. However, even though the economic rationale underlying *Illinois Brick* may prove ill-advised in certain cases, we conclude, nonetheless, that it is sound to limit antitrust lawsuits to direct purchasers. As a result, the trial court did not err in following the *Illinois Brick* rule when interpreting RSA chapter 356.

■ We disagree with the plaintiffs' argument that the *Illinois Brick* rule violates their constitutional right to receive a remedy for their injuries under Part I, Article 14 of the State Constitution. Part I, Article 14 provides:

> Every subject of this state is entitled to a certain remedy, by having recourse to the laws, for all injuries he may receive in his person, property, or character; to obtain right and justice freely, without being obliged to purchase it; completely, and without any denial; promptly, and without delay; conformably to the laws.

We have stated that "[t]he purpose of this provision is to make civil remedies readily available, and to guard against arbitrary and discriminatory infringements on access to courts." *Opinion of the Justices*, 126 N.H. 554, 559 (1985) (quotation and brackets omitted). The right to a remedy, however, is not a fundamental right, but is relative and "does not prohibit all impairments of the right of access." *City of Dover v. Imperial Cas. & Indemn. Co.*, 133 N.H. 109, 116 (1990) (quotation omitted). Because the distinction between direct and indirect purchasers for purposes of maintaining an antitrust action under RSA 356:11 is not an arbitrary or discriminatory infringement of access to the courts, the trial court correctly ruled that there was no violation of Part I, Article 14 of our State Constitution.

■ The plaintiffs next argue that the legislature could not have intended for New Hampshire to follow *Illinois Brick*. They argue that the legislature did not intend to distinguish between direct and indirect purchasers because RSA 356:11 was enacted prior to the *Illinois Brick* decision. By enacting the permissive federal harmonization provision of RSA 356:14, we interpret the legislature's intent as encouraging courts to consider future interpretations of federal antitrust law as well as those existing at the time of the enactment of the statute. We, therefore, reject the position that because a federal case had not been decided at the time of the enactment of RSA chapter 356, the legislature did not intend for the State to follow it.

■ The plaintiffs argue that even if the *Illinois Brick* rule is applicable, they are entitled to bring their antitrust action because they are not indirect purchasers. They assert that because they entered into EULAs with the defendant to use the "Windows 98" operating system, they are not purchasers of the product and, thus, *Illinois Brick* does not apply. The fact

that the plaintiffs were licensees of the defendant's product does not change the fact that they did not purchase their products directly from the defendant and, therefore, cannot be considered direct purchasers for purposes of *Illinois Brick. See In re Microsoft Corp. Antitrust Litigation*, 127 F. Supp. 2d 702, 709 (D. Md. 2001) (rejecting plaintiffs' argument that they were equivalent to direct purchasers of defendant's product for purposes of *Illinois Brick* because they entered into licensing agreements to use the product).

The plaintiffs also argue that they are entitled to bring their antitrust action pursuant to a number of exceptions set forth in *Illinois Brick*. There are two potential exceptions to the application of the *Illinois Brick* rule. The first is where the direct purchaser and indirect purchaser have entered into a pre-existing cost-plus contract. *Illinois Brick*, 431 U.S. at 732 n.12. Under this scenario, the direct purchaser commits to purchasing a fixed quantity of a product in question for the indirect purchaser. *See* 54 AM. JUR. 2D. *Monopolies and Restraints of Trade* § 419 (1996).

The second exception is when the direct purchaser is owned or controlled by its customer. *Illinois Brick*, 431 U.S. at 736 n.16. To satisfy this exception, there must be an element of control such that the relationship between the direct purchaser and either the indirect purchaser or the defendant involves a functional economic or other unity such that there has effectively been one sale. *Jewish Hospital Ass'n v. Stewart Mechanical, Etc.*, 628 F.2d 971, 975 (6th Cir. 1980), *cert. denied*, 450 U.S. 966 (1981).

The plaintiffs have not presented their writ of summons to this court. The appealing party "is responsible for presenting a record sufficient to allow the court to decide the issue presented on appeal." *Rix v. Kinderworks Corp.*, 136 N.H. 548, 553 (1992). Absent such a record, we limit our review to the "legal errors apparent on the face of the record." *Id.* (quotation omitted). Based upon our review of the record, we conclude that the plaintiffs failed to state a cognizable claim under either of these exceptions.

The plaintiffs' remaining arguments lack merit and warrant no further discussion. *See Vogel v. Vogel*, 137 N.H. 321, 322 (1993).

Because we conclude that RSA chapter 356 should be construed consistent with the *Illinois Brick* rule, we affirm the trial court's dismissal of the plaintiffs' action. We recognize that there are legitimate public policy concerns underlying the prohibition against indirect purchasers bringing antitrust lawsuits. As the plaintiffs argue, the remedial scheme created by *Illinois Brick* could grant a windfall to a direct purchaser who sustained no damages because it passed on any overcharge to the indirect purchaser. Such matters of public policy, however, are reserved for the

legislature. *See Opinion of the Justices (School Financing)*, 142 N.H. 892, 900 (1998). We, therefore, leave to it the task of deciding whether indirect purchasers should be expressly allowed to bring claims under the State's antitrust law.

*Affirmed.*

BRODERICK, J., sat for oral argument but did not take part in the final vote; NADEAU and DUGGAN, JJ., concurred.