Rockingham
No. 2003-401

## THE BLACKTHORNE GROUP, INC.

v.

## PINES OF NEWMARKET, INC.

Argued: March 10, 2004
Opinion Issued: April 21, 2004

*Ransmeier & Spellman, P.C.,* of Concord (*Marie M. McPartlin* on the brief), and *Frey, Petrakis, Deeb, Blum, Briggs & Mitts, P.C.,* of Philadelphia, Pennsylvania (*Joel Max Eads* on the brief and orally), for the plaintiff.

*Hall, Morse, Anderson, Miller & Spinella, P.C.,* of Concord (*Frank P. Spinella, Jr.* on the brief and orally), for the defendant.

GALWAY, J. The plaintiff, The Blackthorne Group, Inc., appeals the order of the Superior Court (*Coffey,* J.) dismissing its claims for anticipatory breach of contract, breach of contract, unjust enrichment and quantum meruit against the defendant, Pines of Newmarket, Inc. We affirm.

## I

We assume the following facts to be true for the purposes of this appeal. *See Minuteman, LLC v. Microsoft Corp.*, 147 N.H. 634, 636 (2002).

The plaintiff is a company headquartered in New York, which assesses the value of going-concern assisted living facilities, and helps buyers to obtain financing. The plaintiff is a licensed real estate broker in New York, but is not so licensed in New Hampshire.

The defendant is an assisted living facility in Newmarket. Throughout 2000 and early 2001, the defendant's board of directors sought to sell the business to a qualified buyer. In April 2001, John Godfrey, a principal of the plaintiff, telephoned Edward Jewett, the defendant's president, to inquire about the status of their efforts. Jewett told Godfrey that one of the defendant's shareholders was attempting to arrange financing to purchase the business. He said that if, after sixty days, the shareholder was unsuccessful, the defendant would hire the plaintiff to find a buyer.

Ultimately, the shareholder did not purchase the business and the defendant was unable otherwise to find a buyer. Jewett told Godfrey this in late May 2001. On June 1, 2001, the parties orally agreed that the defendant would retain the plaintiff to locate a qualified buyer for the business and assist in the due diligence, negotiation and closing process. The parties agreed that the fee for the plaintiff's services would be three percent of the eventual sale price.

Within weeks, the plaintiff located a potential, qualified buyer, Fortis Healthcare, LLC (Fortis), a healthcare provider located principally in Boston. During each stage of the transaction (*e.g.*, negotiation, financing and closing), the plaintiff provided consulting services to the defendant. On at least two occasions, the plaintiff asked the defendant to execute a fee agreement memorializing the parties' oral agreement. Although the defendant agreed to do so, it never did. The defendant and Fortis closed on the asset sale of the assisted living facility in August 2002, but the defendant did not pay the plaintiff the three percent fee. The plaintiff sued the defendant to recover that fee. The trial court dismissed the suit on the defendant's motion.

In reviewing a motion to dismiss for failure to state a claim upon which relief may be granted, we assume the truth of all facts the plaintiff alleged and construe all reasonable inferences in the light most favorable to it. *Graves v. Estabrook*, 149 N.H. 202, 203 (2003). If the facts fail to constitute a basis for legal relief, we will uphold dismissal of the claim. *Id.*

## II

The trial court dismissed the plaintiff's lawsuit on the ground that the New Hampshire Real Estate Practice Act (Act) precluded the plaintiff from recovering the three percent fee under either a breach of contract or unjust enrichment/quantum meruit theory. *See* RSA ch. 331-A (1995 & Supp. 2003). We review the trial court's statutory interpretation *de novo. Monahan-Fortin Properties v. Town of Hudson,* 148 N.H. 769, 771 (2002).

We are the final arbiters of the legislature's intent as expressed in the words of the statute considered as a whole. *See Big League Entm't v. Brox Indus.,* 149 N.H. 480, 483 (2003). We first examine the language of the statute, and, where possible, ascribe the plain and ordinary meanings to the words used. *Id.* When a statute's language is plain and unambiguous, we need not look beyond it for further indication of legislative intent, and we refuse to consider what the legislature might have said or add language that the legislature did not see fit to incorporate in the statute. *Monahan-Fortin Properties,* 148 N.H. at 771. Furthermore, we interpret statutes in the context of the overall statutory scheme and not in isolation. *Big League Entm't,* 149 N.H. at 483. By so doing, we are better able to discern the legislature's intent and to interpret statutory language in light of the policy or purpose sought to be advanced by the statutory scheme. *Franklin Lodge of Elks v. Marcoux,* 149 N.H. 581, 585 (2003).

The Act "establishes a comprehensive system for regulating real estate sales and brokerage practices." *Suburban Realty, Inc. v. Albin,* 131 N.H. 689, 692 (1989) (interpreting prior law). Its purpose is to "regulate the practice of real estate brokers and salespersons . . . to ensure that they meet and maintain minimum standards which promote public understanding and confidence in the business of real estate brokerage." RSA 331-A:1 (1995). It was enacted to protect the public against broker fraud and incompetence. *See Coltin v. Manchester Savings Bank,* 105 N.H. 254, 256-57 (1964) (interpreting prior law). Towards these ends, the Act prohibits "any person, directly or indirectly, to act as a real estate broker or real estate salesperson without a license and otherwise complying with the provisions of this chapter." RSA 331-A:3 (1995).

RSA 331-A:32 (1995) precludes "any person" from instituting a lawsuit "for compensation for any act done or service rendered as a broker or salesperson" unless the person "was duly licensed under [the Act] as a broker or salesperson at the time of offering to perform any such act or service, or procuring any promise to contract for the payment of compensation for any such contemplated act or service." RSA 331-A:32 (1995).

RSA 331-A:2 (Supp. 2003) defines the term "broker" as "any person acting for another on commission or for other compensation, for the

promise of such commission or other compensation, or any person licensed under [the Act]" who engages in specified activities. These activities include assisting or directing "in the procuring of prospects, calculated to result in the sale, exchange, lease, or rental of real estate" and assisting or directing "in the negotiation of any transaction calculated or intended to result in the sale, exchange, leasing or rental of real estate." RSA 331-A:2, III (h), (i).

The plaintiff does not challenge the trial court's determination that its activities in the transaction between the defendant and Fortis met the statutory definition of "broker." *See* RSA 331-A:2, III. As the plaintiff also admits it has no New Hampshire real estate broker's license, we hold that the trial court correctly concluded that the Act precludes it from suing the defendant to recover its fee under any theory, including breach of contract and unjust enrichment/quantum meruit. *See* RSA 331-A:32; *Coltin*, 105 N.H. at 255, 257 (holding that Massachusetts broker could not maintain action in New Hampshire courts to recover commission on New Hampshire brokerage agreement) (interpreting prior law). As the Act prohibits the plaintiff from bringing a lawsuit to recover its fee, the trial court properly dismissed its claims. *See* RSA 331-A:32.

## A

The plaintiff first argues that its agreement with the defendant is enforceable because it committed only a "technical" violation of the Act. *See DeCato Brothers, Inc. v. Westinghouse Credit Corp.*, 129 N.H. 504, 509 (1987). We disagree. The plaintiff's oral agreement with the defendant "is illegal and cannot be the foundation of a right to recover," *Coltin*, 105 N.H. at 256, both because the plaintiff has no New Hampshire real estate license and because it did not otherwise comply with the Act. *See* RSA 331-A:3.

We rejected a similar argument in *Kowalski v. Cedars of Portsmouth Condominium Assoc.*, 146 N.H. 130, 133 (2001). In that case, the plaintiff owned condominiums in a complex run by the defendant, a condominium association. *Id.* at 130. Although the defendant had no real estate license, it offered a listing service for condominium owners wishing to sell and rent units. *Id.* at 130-31. The plaintiff used the defendant's services and paid the defendant a commission. *Id.* at 131. He sued to recover the fees on an unjust enrichment claim. *Id.*

The defendant argued that because it had only committed a "technical" violation of the Act, the trial court erred by granting the plaintiff's unjust enrichment claim. *Id.* at 133. We disagreed "because of the general rule that contracts with unlicensed brokers are void." *Id.* at 133; *see Coltin*, 105 N.H. at 256-57.

■ While the plaintiff in this case, unlike the defendant in *Kowalski*, has a real estate license, it is not a New Hampshire license. RSA 331-A:32 prohibits any person who lacks a license "under this chapter" from enforcing a brokerage agreement. Accordingly, because the plaintiff lacks a New Hampshire license, its agreement with the defendant, like the agreement between the parties in *Kowalski*, is invalid and unenforceable. *See* RSA 331-A:32.

The plaintiff's contract with the defendant is also void because the plaintiff failed to comply with RSA 331-A:22-a (Supp. 2003), which pertains specifically to brokers licensed in other jurisdictions. *See* RSA 331-A:3 (making it unlawful for any person to act as real estate broker without a license and without otherwise complying with the Act). That provision prohibits such brokers from: (1) listing, offering, attempting or agreeing to list "real estate in this state for sale or lease unless the broker has acquired a license pursuant to RSA 331-A:22"; (2) acting "as a broker with a buyer or tenant unless the broker is working on behalf of and under the license of a broker licensed under this chapter"; or (3) while representing a buyer or tenant, being "actively involved in a real estate transaction in this state" unless the broker "has entered into a cooperative brokerage agreement with a broker licensed under this chapter who shall represent the buyer or tenant according to this chapter." RSA 331-A:22-a.

Pursuant to the plain meaning of this provision, a broker licensed in another jurisdiction must obtain a New Hampshire real estate license before it lists New Hampshire real estate for sale. Such a broker need not obtain a New Hampshire real estate license before engaging in the other activities the provision describes, but must either work on behalf of and under the license of a New Hampshire broker or enter into a cooperative agreement with one.

■ The plaintiff violated this provision because it acted as "a broker with a buyer or tenant" on its own, instead of on behalf of and under the license of a New Hampshire broker, as statutorily required. *See* RSA 331-A:22-a, III. We disagree with the plaintiff's conclusion that this subdivision does not apply to its activities because it did not act on Fortis' behalf in the transaction. This subdivision applies whenever a person acts "as a broker *with* a buyer or tenant." The subdivision does not require that the broker represent the buyer or act on its behalf.

This case is distinguishable from others in which we have ruled that a technical statutory violation does not automatically render an agreement void. *See DeCato*, 129 N.H. at 509-10. In *DeCato*, for instance, we were asked whether a technical violation of the statute justified "our going

beyond the criminal sanction of the statute" to void the agreement at issue. *Id.* at 509. By contrast, in this case, the statute *itself* renders the agreement void. *See Coltin*, 105 N.H. at 256-57. We cannot ignore the statute's plain language to permit the plaintiff to bring claims the statute expressly prohibits. *See id.*

## B

Relying principally upon cases from other jurisdictions, the plaintiff next asserts that it is entitled to recover its entire three percent fee either because real estate was only "incidental" to the transaction between the defendant and Fortis, or because it was not the "dominant purpose" of the transaction. *See, e.g., Business Brokerage Centre v. Dixon*, 874 S.W.2d 1, 5-6 (Tenn. 1994) ("incidental" approach); *Weingast v. Rialto Pastry Shop*, 152 N.E. 693, 694-95 (N.Y. 1926) ("dominant purpose" approach). Alternatively, the plaintiff contends that it should recover a partial fee based upon the value of personal property exchanged. *See Kazmer-Standish Consul. v. Schoeffel Instrum.*, 445 A.2d 1149, 1153 (N.J. 1982) (permitting business brokers to recover portion of fee attributable to personalty, even if real estate portion outweighs personalty portion). *See generally* Annotation, *Necessity of Real Estate Broker's License*, 82 A.L.R. 3d 1139 (1978 & Supp. 2003).

Some amount of recovery is warranted, the plaintiff argues, because it acted merely as a business broker when it facilitated the sale of the defendant's business as a going concern. Permitting it to recover at least a partial fee is fair, the plaintiff asserts, because it prevents the defendant from obtaining a windfall. In support of these arguments, the plaintiff points to the purpose of the Act, which it maintains is to protect "citizens," and not sophisticated business entities, such as the defendant.

The plain meaning of the Act requires that we reject these arguments. The Act does not exempt "business brokers" from its purview. *See* RSA 331-A:4 (Supp. 2003). With respect to corporate consultants, the Act exempts only those who "receive[ ] a fee from a client based on site searching services rendered in accordance with a written contract, rather than on completion of any particular transaction, and who do[ ] not hold [themselves] out as . . . real estate broker[s]." RSA 331-A:4, VIII. The plaintiff, a real estate broker, did not provide "site searching services," had no "written contract," and its fee was dependent upon "completion of a particular transaction" (*i.e.*, sale of the assisted living facility).

More importantly, the Act expressly defines "real estate" to include "business opportunities which involve *any* interest in real estate." RSA 331-A:2, IX (emphasis added). The use of the word "any" means that the

Act applies regardless of whether real estate is "incidental" to the transaction. The Act thus applies to the brokering of business opportunities involving real estate, no matter how *de minimis* the real estate interest.

■ As the sale of the defendant's business indisputably involved real estate, the Act applied to the sale, even if, as the plaintiff contends, its dominant purpose was not the sale of real estate. Applying the Act to the sale of the defendant's business is consistent with the Act's purpose, which is to protect the "public" from unscrupulous real estate brokers. *See Coltin*, 105 N.H. at 257. The plain language of the Act refutes the plaintiff's assertion that the Act was intended to protect only unsuspecting homebuyers, to the exclusion of sophisticated business entities. *See id.*

The plaintiff's reliance upon cases from other jurisdictions is misplaced. Unlike the statutes in many jurisdictions, New Hampshire's Act expressly applies to the sale of business opportunities that have any real estate component. *See Kazmer-Standish Consul.*, 445 A.2d at 1151 n. 1 (observing that, "[u]nlike statutes of thirteen other jurisdictions, the New Jersey act does not expressly apply to the brokering of business opportunities"); *Dixon*, 847 S.W.2d at 3. We are bound by New Hampshire's legislative scheme, not those of other jurisdictions.

While we acknowledge that prohibiting the plaintiff from recovering even a portion of its fee "may be a harsh result[,] it was, after all, the [plaintiff] who failed to obtain the necessary license and it was that failure that caused its present predicament. Its present misfortune is traceable to no one but itself." *Kowalski*, 146 N.H. at 134 (quotation, ellipses and brackets omitted). The wisdom and reasonableness of the legislative scheme are for the legislature, not the courts, to determine. *Arthur Whitcomb, Inc. v. Town of Carroll*, 141 N.H. 402, 412 (1996). Any recourse lies with the General Court. *See id.*

*Affirmed.*

BRODERICK, C.J., and NADEAU, DALIANIS and DUGGAN, JJ., concurred.