958 A.2d 958 (2008)
Dale ROBINSON
v.
NEW HAMPSHIRE REAL ESTATE COMMISSION.
No. 2008-027.
Supreme Court of New Hampshire.
Argued: September 11, 2008.
Opinion Issued: October 10, 2008.
*959 D'Amante Couser Steiner Pellerin, P.A., of Concord (R. James Steiner and Gayle M. Braley, on the brief), for the petitioner.
Dale Robinson, orally, pro se.
Kelly A. Ayotte, attorney general (Suzanne M. Gorman, senior assistant attorney general, on the brief and orally), for the respondent.
DALIANIS, J.
The petitioner, Dale Robinson, appeals the order of the Superior Court (Mangones, J.) granting the motion to dismiss filed by the respondent, the New Hampshire Real Estate Commission (Commission), and denying his motion for summary judgment. Both motions concerned a single issue: whether the Commission had jurisdiction to hold a hearing on a complaint alleging that the petitioner engaged in misconduct when selling his own property. See RSA 331-A:4, I (2004). The trial court ruled that the Commission had jurisdiction. We reverse.
The trial court's order recited the following facts. The petitioner became a licensed real estate salesperson in 1963 and a licensed real estate broker in 1965. The Commission suspended his licenses in 1987, and revoked them in 1989. Since 1989, therefore, the petitioner has had neither a real estate broker nor a salesperson license.
In 2005, the petitioner placed "For Sale" signs on property he owns in Pembroke, and at nearby locations. The signs included the name "Homestead Realty," a telephone number, and an "R" emblem indicating that Homestead Realty is a member of the National Association of Realtors. Upon seeing the signs, Carlos and Katherine Moreira telephoned the petitioner to ask about buying the property. They asked whether he was the realtor for the property, to which he said, "yes." Upon meeting them, the petitioner allegedly provided the Moreiras with a business card that identified him as a broker at Homestead Realty. The business card contained the same "R" emblem as the "For Sale" signs.
The Moreiras and the petitioner entered into a purchase and sale agreement, and the Moreiras gave him a first deposit of $1,000. The petitioner wrote "No Broker" on the receipt. Two weeks later, the Moreiras gave the petitioner a second deposit, a $1,000 check made payable to Homestead Realty. The petitioner wrote a receipt on the back of a second business card, which also identified him as a broker and included the "R" symbol. The Moreiras subsequently paid the remainder of the down payment. Following a dispute regarding the contract's terms, the Moreiras filed a complaint with the Commission, in which they alleged that the petitioner had violated the New Hampshire Real Estate Practices Act (the Act). See RSA ch. 331-A (2004 & Supp. 2007).
At the hearing on the Moreiras' complaint, the petitioner moved to dismiss the proceedings for lack of subject matter jurisdiction. After denying the motion and conducting the hearing, the Commission concluded that the petitioner had violated: (1) RSA 331-A:3 (2004) and RSA 331-A:34 (Supp.2007) by directly or indirectly acting as a real estate broker without a license; (2) RSA 331-A:26, II (2004) by disregarding the Commission's prior order revoking his licenses; and (3) RSA 331-A:26, XVI *960 (2004) by misrepresenting his membership in a state or national realty organization.
The petitioner appealed to the superior court contesting the Commission's assertion of jurisdiction. The superior court upheld the Commission's decision, and this appeal followed. The sole issue for our review is whether the Commission had subject matter jurisdiction even though the petitioner owned the property at issue. See RSA 331-A:4, I.
This jurisdictional issue involves interpreting the Act, which is a question of law that we review de novo. See In re Juvenile XXXX-XXXX, 151 N.H. 706, 707, 867 A.2d 467 (2005). We are the final arbiters of the legislature's intent as expressed in the words of the statute considered as a whole. Blackthorne Group v. Pines of Newmarket, 150 N.H. 804, 806, 848 A.2d 725 (2004). We first examine the language of the statute, and, where possible, ascribe the plain and ordinary meanings to the words used. Id. When a statute's language is plain and unambiguous, we need not look beyond it for further indication of legislative intent, and we refuse to consider what the legislature might have said or add language that the legislature did not see fit to incorporate in the statute. Id. Furthermore, we interpret statutes in the context of the overall statutory scheme and not in isolation. Id. By so doing, we are better able to discern the legislature's intent and to interpret statutory language in light of the policy or purpose sought to be advanced by the statutory scheme. Id.
The Act establishes a comprehensive system for regulating real estate sales and brokerage practices. Id. Its purpose is to "regulate the practice of real estate brokers and salespersons in order to ensure that they meet and maintain minimum standards which promote public understanding and confidence in the business of real estate brokerage." RSA 331-A:1 (2004). It was enacted to protect the public against broker fraud and incompetence. Blackthorne Group, 150 N.H. at 806, 848 A.2d 725.
"The primary focus of the [Act] is to provide a licensing procedure, whereby all persons who act in the capacity of real estate salespeople or brokers are regulated by the strictures of the licensing law." Finlay Commercial Real Estate v. Paino, 133 N.H. 4, 7, 573 A.2d 125 (1990). Towards this end, the Act sets forth the requirements for licensure, see RSA 331-A:10 (Supp. 2007), and prohibits "any person, directly or indirectly, to act as a real estate broker or real estate salesperson without a license and otherwise complying with the provisions of this chapter," RSA 331-A:3. Acting as a real estate broker or salesperson without a license constitutes a class A misdemeanor. See RSA 331-A:34.
The Act defines a "[b]roker" as "any person acting for another on commission or for other compensation ..., or any person licensed under this chapter who" among other things "[a]dvertises or holds oneself out as being engaged in the business of buying, selling, exchanging, renting or leasing real estate." RSA 331-A:2, III(g) (2004). A salesperson is "an individual who is licensed under a broker to participate in any activity described in [RSA 331-A:2, III]." RSA 331-A:2, X (2004).
The Commission administers the Act. See RSA 331-A:5 (2004). By statute, the Commission "may investigate the actions of any person engaged in the business or acting in the capacity of a real estate broker or real estate salesperson, regardless of whether the transaction was for the person's own account or in the capacity as broker or salesperson," RSA 331-A:28, I (2004), and may impose discipline for any misconduct, see id., or seek *961 judicial relief, see RSA 331-A:35, IV (2004). The Commission may also cause a criminal complaint to be filed. See RSA 331-A:35, I, II (2004).
RSA 331-A:26 (2004 & Supp. 2007) describes in thirty-eight paragraphs "specific courses of conduct which in and of themselves constitute breaches or violations of the standards to which the legislature requires brokers and salespeople to be held." Finlay Commercial Real Estate, 133 N.H. at 7, 573 A.2d 125. Any licensee found guilty of engaging in the conduct described in RSA 331-A:26 "shall be subject to disciplinary action as provided in RSA 331-A:28." RSA 331-A:26. The conduct prohibited includes: (1) violating any provision of the Act or any order issued pursuant to the Act; and (2) misrepresenting membership in any state or national real estate association. RSA 331-A:26, II, XVI.
The petitioner, relying upon RSA 331-A:4, I, argues that he is exempt from the Act's provisions because he was selling his own property. RSA 331-A:4, I, provides that the provisions of the Act shall not apply to: "An owner, builder or tenant of real estate ... with respect to property owned or leased by the owner, builder, or tenant." The petitioner asserts that because he is exempt from the Act, the Commission lacked jurisdiction to conduct the hearing on the Moreiras' complaint. We agree. The plain meaning of RSA 331-A:4, I, is that a property owner with respect to property owned by him is exempt from the Act's provisions.
The State mistakenly contends that the property owner exemption does not apply here because the petitioner held himself out to be a real estate broker. There is no qualifying language in the property owner exemption. See RSA 331-A:4, I. It applies even when a property owner holds himself out to be a real estate broker. By contrast, the exemption for corporate consultants specifically states that it applies only when the consultant "does not hold himself or herself out as a real estate broker." RSA 331-A:4, VIII (2004). Had the legislature intended the property owner exemption to apply only when the property owner does not hold himself out to be a real estate broker, it could have included similar language. We cannot, however, consider what the legislature might have said or add language that the legislature did not see fit to incorporate in the statute. Blackthorne Group, 150 N.H. at 806, 848 A.2d 725.
The State also argues that the Commission had jurisdiction over the matters before it under RSA 331-A:28, I. RSA 331-A:28, I, provides:
The commission may investigate the actions of any person engaged in the business or acting in the capacity of a real estate broker or real estate salesperson, regardless of whether the transaction was for the person's own account or in the capacity as broker or salesperson. If found guilty, after a hearing, of violating this chapter, the commission may impose any one or more of the following sanctions:
(a) Suspend, revoke or deny a license or the renewal of such license.
(b) Levy a fine not to exceed $2,000 for each offense.
(c) Require the person to complete a course or courses in selected areas of real estate practice relevant to the section of this chapter violated.
The plain meaning of RSA 331-A:4, I, however, is that the provisions of the Act, including RSA 331-A:28, I, do not apply when a property owner is selling his own property. Even if we were to assume, without deciding, that, as the State contends, we must modify the plain language *962 of RSA 331-A:4, I, by construing it together with RSA 331-A:28, I, the State would not prevail.
When interpreting two or more statutes that deal with a similar subject matter, we construe them so that they do not contradict each other, and so that they will lead to reasonable results and effectuate the legislative purpose of the statutes. Chase v. Ameriquest Mortgage Co., 155 N.H. 19, 22, 921 A.2d 369 (2007). Thus construed, we would conclude that, at best, RSA 331-A:28, I, grants the Commission the authority to investigate the actions of an alleged property owner, but that RSA 331-A:4, I, prohibits the Commission from imposing discipline if, after investigation, it confirms that the person owns the property in question. Any other construction would render RSA 331-A:4, I, superfluous. See Silva v. Botsch, 120 N.H. 600, 602, 420 A.2d 301 (1980) (construing a statute to render some provisions superfluous is inconsistent with legislative intent).
For all of the above reasons, therefore, we hold that the petitioner was exempt from the Act's provisions, and the Commission, thus, lacked jurisdiction to hold a hearing on the Moreiras' complaint. Should the legislature disagree with our interpretation of the Act, it is free to amend the Act as it sees fit. Moreover, we note that the chapter as a whole contains several internally inconsistent and confusing provisions; thus, the legislature may wish to revise it to make it clearer.
Reversed.
BRODERICK, C.J., and DUGGAN, GALWAY and HICKS, JJ., concurred.