SUPREME COURT OF ARIZONA
En Banc

| | | |
|---|---|---|
| BUNKER'S GLASS COMPANY, an Arizona corporation, on Behalf of Themselves and All Others Similarly Situated, | ) ) ) ) | Arizona Supreme Court No. CV-02-0140-PR |
| | ) | Court of Appeals Division One |
| Plaintiff-Appellant/ Respondent, | ) ) ) | No. 1 CA-CV 01-0046 |
| | ) | Maricopa County |
| v. | ) | Superior Court |
| | ) | No. CV 2000-002282 |
| PILKINGTON plc, a foreign corporation, PILKINGTON LIBBEY-OWENS-FORD CO. INC., a foreign corporation, PPG INDUSTRIES, INC., a foreign corporation, FORD MOTOR CO., a foreign corporation, GUARDIAN INDUSTRIES CORPORATION, a foreign corporation, and AFG INDUSTRIES, INC., a foreign corporation, | ) ) ) ) ) ) ) ) ) ) ) ) | (CONSOLIDATED WITH) |
| Defendants-Appellees/ Petitioners. | ) ) | |
| _____ | ) | Arizona Supreme Court |
| | ) | No. CV-02-0175-PR |
| MICHAEL R. GRAY, M.D., on Behalf of Himself and All Others Similarly Situated, | ) ) ) | Court of Appeals Division Two |
| | ) | No. 2 CA-CV 01-0121 |
| Plaintiff-Appellant/ Respondent, | ) ) | Pima County |
| | ) | Superior Court |
| v. | ) | No. C 20000781 |
| | ) | |
| PHILIP MORRIS USA INC., R.J. REYNOLDS TOBACCO CO., BROWN & WILLIAMSON TOBACCO CORP., LORILLARD TOBACCO CO., LIGGETT GROUP, INC., and BROOKE GROUP, LTD., | ) ) ) ) ) ) ) | **O P I N I O N** |
| | ) | |
| Defendants-Appellees/ Petitioners. | ) ) | |
| _____ | ) | |

Appeal from the Superior Court in Maricopa County
The Honorable Gary E. Donahoe, Judge
**VACATED AND REMANDED**

Opinion of the Court of Appeals, Division One
202 Ariz. 481, 47 P.3d 1119 (App. 2002)
**AFFIRMED**

---

Appeal from the Superior Court in Pima County
The Honorable Theodore B. Borek, Judge
**VACATED AND REMANDED**

Court of Appeals, Division Two
Memorandum Decision, filed May 7, 2002
**AFFIRMED**

---

DAVIS, McKEE & FORSHEY, P.C.                          Phoenix, AZ
     by   Jeffrey A. McKee
and
LAW OFFICES OF GEORGE A. BARTON, P.C.          Kansas City, MO
     by   George A. Barton
and
LAW OFFICES OF THOMAS H. BRILL                      Leawood, KS
     by   Thomas H. Brill
and
SHUGHART, THOMSON, KILROY, GOODWIN, RAUP, P.C.      Phoenix, AZ
     by   Marty Harper
     and  Kelly J. Flood
Attorneys for Plaintiff-Appellant/Respondent
Bunker's Glass Company


LAW OFFICES OF GORDON BALL                        Knoxville, TN
     by   W. Gordon Ball
and
LAW OFFICE OF SHELDON LAZAROW                       Tucson, AZ
     by   Sheldon Lazarow
and
THE CUNEO LAW GROUP, P.C.                      Washington, DC
     by   Jonathan Cuneo
     and  Daniel Cohen
Attorneys for Plaintiff-Appellant/Respondent
Michael R. Gray, M.D.

KARP, HEURLIN & WEISS, P.C.                          Tucson, AZ
      by   Bruce R. Heurlin
and
PEPPER HAMILTON, L.L.P.                        Philadelphia, PA
      by   Laurence Z. Shiekman
Attorneys for Defendants-Appellees/Petitioners
Pilkington plc
Pilkington Libbey-Owens-Ford Co., Inc., fka
Pilkington North America


BRYAN CAVE L.L.P.                                   Phoenix, AZ
      by   Lawrence G. Scarborough
      and  Kelly A. O'Connor
and
CRAVATH, SWAINE & MOORE                          New York, NY
      by   Paul M. Dodyk
Attorneys for Defendants-Appellees/Petitioners
PPG Industries, Inc.


SNELL & WILMER, L.L.P.                              Phoenix, AZ
      by   Daniel J. McAuliffe
and
O'MELVENY & MYERS, L.L.P.                       Washington, DC
      by   John H. Beisner
      and  Neil K. Gilman
Attorneys for Defendant-Appellee/Petitioner
Ford Motor Co.


KARP, HEURLIN & WEISS, P.C.                          Tucson, AZ
      by   Bruce R. Heurlin
and
ARNOLD & PORTER                                 Washington, DC
      by   Alexander E. Bennett
      and  Amy Ralph Mudge
Attorneys for Defendant-Appellee/Petitioner
Guardian Industries Corporation

SQUIRE, SANDERS & DEMPSEY, L.L.P.                   Phoenix, AZ
      by   Donald A. Wall
and
SQUIRE, SANDERS & DEMPSEY, L.L.P.               Washington, DC
      by   Edward A. Geltman
      and  James V. Dick
Attorneys for Defendant-Appellee/Petitioner
AFG Industries

```
OSBORN MALEDON, P.A.                                         Phoenix, AZ
     by   William J. Maledon
     and  Andrew D. Hurwitz
and
HELLER, EHRMAN, WHITE & McAULIFFE, L.L.P.          Los Angeles, CA
     by   Darryl L. Snider
     and  Carlos Solis
     and  Michael T. Williams
and
HELLER, EHRMAN, WHITE & McAULIFFE, L.L.P.          Washington, DC
     by   Kenneth L. Chernof
and
BOIES, SCHILLER and FLEXNER, L.L.P.                         Armonk, NY
     by   David Boies
     and  Sherab Posel
and
BOIES, SCHILLER and FLEXNER, L.L.P.                  Washington, DC
     by   Donald Flexner
     and  Amy Mauser
Attorneys for Defendant-Appellee/Petitioner
Philip Morris USA Inc.


SHUGHART, THOMSON, KILROY, GOODWIN, RAUP, P.C.       Phoenix, AZ
     by   Brian Michael Goodwin
     and  Lori V. Berke
and
JONES, DAY, REAVIS & POGUE                           Washington, DC
     by   Thomas F. Cullen, Jr.
     and  William V. O'Reilly
     and  Edwin L. Fountain
Attorneys for Defendant-Appellee/Petitioner
R. J. Reynolds Tobacco, Co.


BROWN & BAIN, P.A.                                         Phoenix, AZ
     by   Howard Ross Cabot
and
KIRKLAND & ELLIS                                     Washington, DC
     by   Colin R. Kass
KIRKLAND & ELLIS                                         Chicago, IL
     by   Stephen Patton
     and  Andrew R. McGaan
     and  Barack S. Echols
Attorneys for Defendant-Appellee/Petitioner
Brown & Williamson Tobacco Corp.
```

```
GREENBERG TRAURIG, L.L.P.                                  Phoenix, AZ
     by   Pamela M. Overton
     and  Jennifer M. Dubay
and
WEIL, GOTSHAL & MANGES, L.L.P.                          Washington, DC
     by   Peter D. Isakoff
     and  Holly E. Loiseau
and
WEIL, GOTSHAL & MANGES, L.L.P.                          New York, NY
     by   Irving Scher
Attorneys for Defendant-Appellee/Petitioner
Lorillard Tobacco, Co.


CASEBOLT, GERMAINE & DRIGGS, P.L.C.                       Phoenix, AZ
     by   Sanford J. Germaine
and
KASOWITZ, BENSON, TORRES and FRIEDMAN, L.L.P.        New York, NY
     by   Aaron H. Marks
Attorneys for Defendants-Appellees/Petitioners
Liggett Group, Inc. and Brooke Group, Ltd.


JANET A. NAPOLITANO, Former ARIZONA
     ATTORNEY GENERAL                                    Phoenix, AZ
TERRY GODDARD, ARIZONA ATTORNEY GENERAL
     by   Timothy A. Nelson, Special Assistant
          Attorney General
     and  David D. Weinzweig, Assistant Attorney General
     and  Paula S. Bickett, Chief Counsel,
          Civil Appeals Section
Attorneys for Amicus Curiae
State of Arizona


HAGENS, BERMAN & MITCHELL, L.L.C.                         Phoenix, AZ
     by   Christopher A. O'Hara
and
SULLIVAN & CROMWELL                                      New York, NY
     by   David B. Tulchin
     and  Joseph E. Neuhaus
     and  Jeremy T. Kamras
and
HELLER, EHRMAN, WHITE & McAULIFFE, L.L.P.      San Francisco, CA
     by   Robert A. Rosenfeld
and
```

MICROSOFT CORPORATION                                    Redmond, WA
      by   Richard Wallis
      and  Thomas W. Burt
      and  Steven J. Aeschbacher
Attorneys for Amicus Curiae
Microsoft Corporation


IRVINE VAN RIPER, P.A.                                    Phoenix, AZ
      by   Thomas K. Irvine
and
AMERICAN ANTITRUST INSTITUTE                          Washington, DC
      by   Warren S. Grimes
      and  Albert Foer
Attorneys for Amicus Curiae
American Antitrust Institute

**B E R C H**, Justice

¶1      The Arizona Antitrust Act provides that "[a] person . . . injured in his business or property by a violation of this article may bring an action for . . . damages sustained." Ariz. Rev. Stat. ("A.R.S.") § 44-1408(B) (2003). The Defendants in these consolidated cases ask us to hold that an indirect purchaser who is able to prove injury to business or property from an antitrust violation does not fall within the scope of this provision. We conclude that Defendants' interpretation contravenes the language of the statute, the goals of antitrust regulation expressed in the Arizona Constitution, and sound policy.

**PROCEDURAL HISTORY OF THE CASE**

¶2      Plaintiffs in these consolidated cases filed separate class action suits against various flat glass and tobacco manufacturers for alleged violations of the Arizona Antitrust Act.

*See* A.R.S. §§ 44-1401 to -1416 (2003). The respective trial courts granted Defendants' motions to dismiss for failure to state a claim for relief, precluding Plaintiffs from pursuing a civil antitrust claim under A.R.S. § 44-1408. The court of appeals in each case reversed. *Gray v. Philip Morris Inc.*, 2 CA-CV 2001-0121 (Ariz. App. May 7, 2002) (mem. decision); *Bunker's Glass Co. v. Pilkington plc (Bunker's I)*, 202 Ariz. 481, 47 P.3d 1119 (App. 2002). We granted Defendants' petitions for review to resolve whether indirect purchasers may sue under the Arizona Antitrust Act.

## DISCUSSION

¶3          This case continues the debate over whether indirect purchasers should be allowed to sue for injury resulting from antitrust violations, or whether such suits should be restricted to direct purchasers of goods. One goal of antitrust law is to prevent entities that possess monopoly power from using that power to illegally overcharge purchasers. Presumably this goal has force whether the purchasers buy directly from the manufacturer, and hence are direct purchasers, or whether they purchase farther down the distribution line from retailers, and hence are indirect purchasers. A purchaser who buys directly from the manufacturer may be injured by manufacturer overcharges. In some cases, however, a direct purchaser who resells the goods may pass on the overcharge from the manufacturer to later (indirect) purchasers by raising the price of the item. The question presented in this case

-7-

is whether indirect purchasers so injured should be allowed to make their case to recover the overcharges they have paid.

¶4     This case turns upon the interpretation of a provision of the Arizona Antitrust Act that permits a "person" to sue to redress an antitrust injury.  A.R.S. § 44-1408(B).  Generally, the best indicator of the meaning of a statute is its plain language.  *Powers v. Carpenter*, 203 Ariz. 116, 118, ¶ 9, 51 P.3d 338, 340 (2002).  The Act defines "person" as including "an individual, corporation, . . . or any other legal entity."  A.R.S. § 44-1401.  Nothing in this language restricts the right of action to direct purchasers injured by violations of the Arizona Antitrust Act or precludes indirect purchasers from suing.  Indeed the Court of Appeals reasoned, and we agree, that by defining the term "person" to include an "individual," the legislature signaled its intent to allow indirect purchasers to sue, because individuals are rarely direct purchasers.  *Bunker's I*, 202 Ariz. at 485, ¶ 12, 47 P.3d at 1123.

¶5     The Defendants' main argument, however, does not rely on the plain language of A.R.S. § 44-1408, but on the judicial construction of a federal antitrust provision, § 4 of the Clayton Act, 15 U.S.C. § 15(a) (2000), which is phrased almost identically to A.R.S. § 44-1408.  In *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 728-29, 97 S. Ct. 2061, 2066 (1977), the United States Supreme Court held that only a direct purchaser may bring an action under

§ 4 of the Clayton Act. The Defendants contend that by enacting A.R.S. § 44-1412, the legislature expressed its desire that Arizona courts apply *Illinois Brick* and similarly preclude indirect purchasers from suing under the Arizona statute. We disagree.

¶6       As the court of appeals observed in *Gray*, the "limitation [to direct purchasers] was imposed by *Illinois Brick* based more on policy considerations than on an interpretation of the actual words of the federal statute." *Gray*, 2 CA-CV 2001-0121, slip op. at 6, ¶ 10. We consider those policy matters later in this opinion. For now, we simply note that nothing in the plain language of A.R.S. § 44-1408 prohibits indirect purchasers who suffer injury from illegal anti-competitive conduct from suing.

¶7       Our current antitrust statutes were adopted from the Uniform State Antitrust Act in 1974, three years before *Illinois Brick* was decided. *See* 1974 Ariz. Sess. Laws, ch. 26, § 1. Section 44-1412 contains a sentence from the Uniform Act and a sentence added by the Arizona legislature. The first sentence states: "This article shall be applied and construed to effectuate its general purpose to make uniform the law with respect to the subject of this article among those states that enact it." *Id.* To this "uniformity clause" the legislature added a sentence that we shall call the "federal guidance clause": "It is the intent of the legislature that in construing this article, the courts may use as a guide interpretations given by the federal courts to comparable

federal antitrust statutes." *Id.;* Unif. State Antitrust Act § 12, 7C U.L.A. 369 (2000). The Defendants argue that the federal guidance clause directs the court to follow the Supreme Court's holding in *Illinois Brick* and precludes indirect purchasers from asserting a private right of action. We find that argument unpersuasive for several reasons.

¶8      First, we do not read the federal guidance clause as manifesting a legislative intent to rigidly follow federal precedent on every issue of antitrust law regardless of whether differing concerns and interests exist in the state and federal systems, and irrespective of whether uniformity among the states or between the states and the federal system could be achieved by doing so.

¶9      Second, by using the word "may" in drafting the statute, the legislature made the application of A.R.S. § 44-1412 permissive rather than mandatory. *Bunker's I*, 202 Ariz. at 488-89, ¶ 29, 47 P.3d at 1126-27 (concluding that the legislature's use of the word "may" in § 44-1412 describes permissive conduct); *see also Outdoor Sys., Inc. v. City of Mesa*, 169 Ariz. 301, 307, 819 P.2d 44, 50 (1991). If this court simply declined to follow *Illinois Brick*'s guidance, the plain language of § 44-1408 would allow an indirect purchaser suit.

¶10      We find it instructive that two states with similar right-of-action provisions but no federal guidance clauses have

-10-

also rejected judicial attempts to constrict the range of persons injured by illegal activity who may maintain a state-law-based antitrust cause of action in state court. *See Hyde v. Abbott Labs., Inc.*, 473 S.E.2d 680, 684 (N.C. App. 1996) (concluding that statutory language "any person" encompasses indirect purchasers); *see also Blake v. Abbott Labs., Inc.*, 1996-1 Trade Cas. (CCH) ¶ 71,369, at 76,856, *available at* 1996 WL 134947 at *3 (Tenn. Ct. App. 1996) (finding it "abundantly clear from the unambiguous provisions" of the Tennessee Act "that there is an individual right, under the laws of this state, to maintain an action against any person or entity guilty of violating the provisions of [the Tennessee Act], whether the individual is a direct purchaser or indirect purchaser"). In doing so, each court relied upon the plain language of its state's act.

¶11    Third, § 44-1412 evinces no specific legislative intent to prohibit indirect purchaser actions because the guidance clause was enacted before *Illinois Brick* was decided. If the legislature had any specific case law regarding indirect purchasers in mind when it included the guidance clause, it would have been the holding of *Western Liquid Asphalt*, a case in which the State of Arizona participated as an indirect-purchaser plaintiff. In *Western Liquid Asphalt*, the Ninth Circuit permitted indirect purchasers to sue for antitrust injury. *See In re W. Liquid Asphalt Cases*, 487 F.2d 191, 200 (9th Cir. 1973). The Ninth

-11-

Circuit's holding in *Western Liquid Asphalt* was the law of the circuit when the Arizona legislature adopted the current antitrust statutes, and we assume that the legislature would have looked to the Ninth Circuit's interpretation of the Clayton Act as a guide. Indeed, permitting indirect purchaser suits was the prevailing rule nationwide before the Court decided *Illinois Brick*.[1]

¶12     Fourth, § 44-1408 has consistently been interpreted as allowing indirect purchaser claims.  The Arizona Attorney General has brought several actions on behalf of the state and its agencies for harm incurred as an indirect purchaser, *e.g., California v. ARC Am. Corp.*, 490 U.S. 93, 97-98, 109 S. Ct. 1661, 1663 (1989) (suing under Arizona law as an indirect purchaser), and, as required by statute, has notified the legislature of antitrust settlements. *See* A.R.S. §§ 41-191.01 to -.02(B) (1999).  Yet despite having been notified repeatedly of antitrust settlements on behalf of indirect purchasers, the legislature has not acted to modify § 44-1408 since

---

[1]     Before *Illinois Brick*, six of the seven federal circuit courts ruling on the issue held that indirect purchasers could sue for damages caused by violations of the federal antitrust laws. *Illinois v. Ampress Brick Co.*, 536 F.2d 1163 (7th Cir. 1976), *rev'd sub nom. Illinois Brick Co. v. Illinois*, 431 U.S. 720, 97 S. Ct. 2061 (1977); *Yoder Bros., Inc. v. Cal.-Fla. Plant Corp.*, 537 F.2d 1347 (5th Cir. 1976); *In re W. Liquid Asphalt Cases*, 487 F.2d 191 (9th Cir. 1973); *Illinois v. Bristol-Myers Co.*, 470 F.2d 1276 (D.C. Cir. 1972); *West Virginia v. Chas. Pfizer & Co.*, 440 F.2d 1079 (2d Cir. 1971); *Mangano v. Am. Radiator & Standard Sanitary Corp.*, 438 F.2d 1187 (3d Cir. 1971) (upholding dismissal of indirect purchaser claim); *S.C. Council of Milk Producers, Inc. v. Newton*, 360 F.2d 414 (4th Cir. 1966).

the *Illinois Brick* decision.  Moreover, in order to protect Arizona taxpayers who are the indirect purchasers of goods and services through public procurement contracts, those bidding on public contracts must assign to the state claims for overcharges resulting from antitrust violations.  *See* http://sporas.ad.state.az.us/PoliciesDocuments/terms/UTCv7.pdf (setting forth Uniform Terms and Conditions for State Contracts § 6.5 ("Third Party Antitrust Violations")).  These actions reflect the state policy of accepting the benefits of indirect purchaser lawsuits and protecting Arizona taxpayers in their role as indirect purchasers.

¶13     Fifth, construing the guidance clause to mandate following *Illinois Brick* would result in a construction that thwarts the legislative intent. As mentioned earlier, A.R.S. § 44-1412 consists of two sentences.  The heading of the section is "Uniformity," and the first sentence expresses the legislative desire that the law be uniform with respect to the subject of the article "among those states that enact it." *Id.*  In analyzing the uniformity clause, we must begin with its plain language, which urges uniformity among the states that enact the Uniform State Antitrust Act.  But counting Arizona, only four states have adopted the Uniform Act.  As an initial matter, that only four states adopted the Uniform Act negates any possibility of securing national uniformity through adoption of the Act.  A brief review of the law in the three other states that did pass the Uniform Act

further confirms the impossibility of fulfilling the legislature's desire of uniformity even among those few states.

¶14 Although Delaware is listed in Uniform Laws Annotated as having adopted the Uniform Act, its legislature changed it significantly from the uniform provision. The section allowing a private right of action was omitted altogether, and the attorney general was authorized to sue on behalf of Delaware citizens injured by illegal conduct. Del. Code Ann. tit. 6, § 2108 (1999). The Michigan and North Dakota acts follow the Uniform Act more closely, but add to the private right of action provision express legislation rejecting *Illinois Brick* and clarifying that indirect purchasers may sue. Mich. Comp. Laws § 445.778(2) (2001); N.D. Cent. Code § 51-08.1-08(3) (1999). Thus there is no uniformity even among the four states enacting versions of the Uniform Act.

¶15 If the legislature's goal in enacting the uniformity clause was to foster national uniformity in antitrust laws, the picture becomes even more idiosyncratic. Twelve states have no rule regarding indirect purchasers.[2] Twenty-five states and the District of Columbia allow some form of indirect purchaser

---

[2] Alaska, Arkansas, Delaware, Georgia, Montana, Ohio, Pennsylvania, South Carolina, Utah, Virginia, West Virginia, and Wyoming. As recently as 1999, the attorneys general of Arkansas, Ohio, South Carolina, Utah, and West Virginia filed suit seeking damages under each respective state's antitrust laws on behalf of indirect purchasers. *See FTC v. Mylan Labs., Inc.*, 62 F. Supp. 2d 25, 44-54 (D.D.C. 1999).

actions,[3] twenty-three of them by *Illinois Brick* repealer statutes[4]

and three by judicial construction of the right-of-action statute.[5]

The courts in twelve states have interpreted their antitrust

---

[3]    For purposes of this analysis, we do not distinguish between the forms of indirect purchaser suits allowed.  For example, some jurisdictions allow individual indirect purchaser actions, while others limit the right to sue to the attorney general as parens patriae.  *See supra* n.4.  Both are counted as allowing indirect purchaser suits.  Any allowance for indirect purchaser suits demonstrates that the jurisdiction does not believe that allowing these suits will unduly complicate antitrust litigation.

[4]    Alabama, Ala. Code § 6-5-60(a) (1993); California, Cal. Bus. & Prof. Code § 16750(a) (West 1997); Colorado, Colo. Rev. Stat. § 6-4-111(2) (2002) (authorizing the state attorney general to bring suit for indirect injury to any government or public entity); District of Columbia, D.C. Code Ann. § 28-4509 (2001); Hawaii, Haw. Rev. Stat. §§ 480-3, -13, -14 (1993 & Supp. 2001) (allowing the state attorney general to file class action suit on behalf of indirect purchasers); Idaho, Idaho Code § 48-108(2) (Michie 2003) (permitting the state attorney general as parens patriae to bring suit); Illinois, 740 Ill. Comp. Stat. 10/7(2) (2002); Kansas, Kan. Stat. Ann. § 50-161(b) (Supp. 2002); Maine, Me. Rev. Stat. Ann. tit. 10 § 1104(1) (West 1997); Maryland, Md. Code Ann., Com. Law II § 11-209(b)(2)(ii) (2000) (allowing the state and its subdivisions to bring indirect purchaser suits); Michigan, Mich. Comp. Laws § 445.778(2) (2001); Minnesota, Minn. Stat. § 325D.57 (1995); Mississippi, Miss. Code Ann. § 75-21-9 (2000); Nebraska, Neb. Rev. Stat. § 59-821 (Supp. 2002); Nevada, Nev. Rev. Stat. 598A.210(2) (Supp. 2001); New Mexico, N.M. Stat. Ann. § 57-1-3(A) (Michie 2000); New York, N.Y. Gen. Bus. Law § 340(6) (McKinney Supp. 2003); North Dakota, N.D. Cent. Code § 51-08.1-08(3) (1999); Oregon, Or. Rev. Stat. § 646.775 (2001) (allowing attorney general to sue on behalf of indirect purchasers); Rhode Island, R.I. Gen. Laws § 6-36-12 (2001) (same); South Dakota, S.D. Codified Laws § 37-1-33 (2000); Vermont, Vt. Stat. Ann. tit. 9, § 2465(b) (Supp. 2002); Wisconsin, Wis. Stat. § 133.18(1)(a) (2001).

[5]    Iowa, *Comes v. Microsoft Corp.*, 646 N.W.2d 440, 451 (Iowa 2002); North Carolina, *Hyde v. Abbot Labs., Inc.*, 473 S.E.2d 680, 684 (N.C. Ct. App. 1996); Tennessee, *Blake*, 1996-1 Trade Cas. (CCH) at 76,854, *available at* 1996 WL 134947.

statutes as requiring them to follow *Illinois Brick* and to reject standing for indirect purchasers.[6] It is significant, though, that six of the twelve states that have followed *Illinois Brick* have mandatory guidance statutes requiring that the state acts "shall" be construed in harmony with federal law.[7] Of the twelve, only New Hampshire's guidance statute is phrased permissively ("may"), as is Arizona's. *See Minuteman, LLC v. Microsoft Corp.*, 795 A.2d 833, 836 (N.H. 2002).

---

[6] Connecticut, *Vacco v. Microsoft Corp.*, 793 A.2d 1048 (Conn. 2002); Florida, *Mack v. Bristol-Myers Squibb Co.*, 673 So. 2d 100 (Fla. Dist. Ct. App. 1996) (holding that indirect purchasers may sue under Florida's Deceptive Trade Practices Act, but not under the state antitrust act); Indiana, *Berghausen v. Microsoft Corp.*, 765 N.E.2d 592, 596 (Ind. Ct. App. 2002); Kentucky, *Arnold v. Microsoft Corp.*, No. 00-CI-00123, 2001 WL 193765 at *3 (Ky. Cir. Ct. July 21, 2000); Louisiana, *Free v. Abbott Labs., Inc.*, 176 F.3d 298, 301 (5th Cir. 1999) (interpreting Louisiana law), *aff'd*, 529 U.S. 333, 120 S. Ct. 1578 (mem. 2000); Massachusetts, *Ciardi v. F. Hoffmann-La Roche, Ltd.*, 762 N.E.2d 303, 312 & n.18 (Mass. 2002); Missouri, *Ireland v. Microsoft Corp.*, 2001-1 Trade Cas. (CCH) ¶ 73,180, *available at* 2001 WL 1868946 (Mo. Cir. 2001); New Hampshire, *Minuteman, LLC v. Microsoft Corp.*, 795 A.2d 833, 839-40 (N.H. 2002); New Jersey, *Kieffer v. Mylan Labs., Inc.*, 1999-2 Trade Cas. (CCH) ¶ 72,673, *available at* 1999 WL 1567726 (N.J. Super. Ct. Law Div. 1999); Oklahoma, *Major v. Microsoft Corp.*, 60 P.3d 511, 513, ¶¶ 8-9 (Okla. Ct. App. 2002); Texas, *Abbott Labs., Inc. v. Segura*, 907 S.W.2d 503 (Tex. 1995); Washington, *Blewett v. Abbott Labs., Inc.*, 938 P.2d 842, 846 (Wash. Ct. App. 1997).

[7] Connecticut, Massachusetts, Missouri, New Jersey, Oklahoma, and Texas. In addition, the Washington statute provides that Washington courts shall "be guided by" federal law. Wash. Rev. Code § 19.86.920 (2003). The Washington Court of Appeals has interpreted that language to mean that, while the court is not irrevocably bound to follow federal law, it should do so unless some reason rooted in law dictates a different result. Because it found no state-law-based reason to deviate from federal law, the court elected to follow *Illinois Brick*. *Blewett*, 938 P.2d at 846.

¶16 Thus, the quest for uniformity is a fruitless endeavor and Arizona's ruling one way or the other neither fosters nor hinders national uniformity. The court cannot, by any holding in this case, contribute significantly to national uniformity on this issue.

¶17 Sixth, it is debatable whether the legislature's desire for uniformity applies to this particular issue. The Prefatory Note to the Uniform Act discusses uniformity. Unif. State Antitrust Act Prefatory Note, 7C U.L.A. at 352. As the Defendants have vociferously argued, consistency with federal law is part of the uniformity encouraged. But nothing in the Uniform Act suggests that the uniformity sought relates to the issue of standing to sue in state court on a state-law-based right of action.[8]

¶18 Instead, the Prefatory Note to the Uniform Act suggests

---

[8] The dissent argues that the issue is not one of standing, but rather one of injury. *See* Dissent ¶¶ 52-53. We import our terminology from the academic literature, which speaks of the problem in terms of standing, and view the question as deciding who may sue. *See* Joseph P. Bauer, *The Stealth Assault on Antitrust Enforcement: Raising the Barriers for Antitrust Injury and Standing*, 62 U. Pitt. L. Rev. 437 (2001); Roger D. Blair & Jeffrey L. Harrison, *Reexamining the Role of* Illinois Brick *in Modern Antitrust Standing Analysis*, 68 Geo. Wash. L. Rev. 1 (1999); William M. Landes & Richard A. Posner, *Should Indirect Purchasers Have Standing to Sue Under the Antitrust Laws? An Economic Analysis of the Rule of* Illinois Brick, 46 U. Chi. L. Rev. 602 (1979). While the Supreme Court describes the question as deciding who has been injured, 431 U.S. at 729, the Court does not allow indirect purchasers ever to show how or whether they have suffered an antitrust injury, but rather cuts off their right to sue. We therefore think the standing terminology fairly describes the issue.

that the uniformity sought relates to standards by which to determine anti-competitive conduct, and, in turn, the methods for enforcing compliance with the Uniform Act: "If state antitrust legislation is to form an integral part of our overall antitrust policy, the burden of compliance with the antitrust laws of the several states must be abated by the adoption of a uniform state antitrust act." Unif. State Antitrust Act Prefatory Note, 7C U.L.A. at 352. The phrase "the burden of compliance" is significant because it implies compliance with substantive provisions of antitrust law.

¶19    The intent of the Uniform Act to create nationwide substantive standards for the enforcement of antitrust law becomes more clear in this passage from the Prefatory Note:

> Since the Act parallels the federal antitrust structure in its basic prohibitions, the following of federal antitrust precedent should be encouraged. Of course, the judiciary at either level must remain independent, free to avoid the misjudgments of the other, for this is one of the advantages of federalism. Given this [U]niform Act paralleling *substantive* federal antitrust [law,] compliance with federal law will be tantamount to compliance with all antitrust law.

*Id.* (emphasis added).

¶20    Thus the goal of the Uniform Act appears to be uniformity in the standard of conduct required, not necessarily in procedural matters such as who may bring an action for injuries caused by violations of the standard of conduct. This is the precise

-18-

approach to uniformity taken by the Iowa Supreme Court:

> The purpose behind both state and federal antitrust law is to apply a uniform standard of conduct so that businesses will know what is acceptable conduct and what is not acceptable conduct. To achieve this uniformity or predictability, we are not required to define who may sue in our state courts in the same way federal courts have defined who may maintain an action in federal court. Rather, our guiding principle in interpreting the Iowa Competition Law is to do so in such a way as to prohibit "restraints of economic activity and monopolistic conduct." Harmonizing our construction and interpretation of state law as to what conduct is governed by the law satisfies the harmonization provision.

*Comes v. Microsoft Corp.*, 646 N.W.2d 440, 446 (Iowa 2002) (quoting Iowa Code § 553.2 (1997)).

¶21    The Supreme Court has also considered uniformity in the type of plaintiff who has a private right of action and found it unnecessary. The Court explained that *Illinois Brick* does not preclude states from allowing indirect purchaser suits:

> It is one thing to consider the congressional policies identified in *Illinois Brick* and *Hanover Shoe* in defining what sort of recovery federal antitrust law authorizes; *it is something altogether different, and in our view inappropriate, to consider them as defining what federal law allows States to do under their own antitrust law*. . . . We construed § 4 as not authorizing indirect purchasers to recover under federal law because that would be contrary to the purposes of Congress. But *nothing in Illinois Brick suggests that it would be contrary to*

-19-

> *congressional purposes for States to allow indirect purchasers to recover under their own antitrust laws.*

*ARC Am. Corp.*, 490 U.S. at 103, 109 S. Ct. at 1666 (emphasis added). The Court elaborated that allowing state laws to protect indirect purchasers would not interfere with the federal antitrust policy examined in *Illinois Brick*, which focuses on large-scale, potentially nationwide anti-competitive conduct. *Id.*

¶22 Defendant Flat Glass Manufacturers asserts that "Arizona's appellate courts have, to date, consistently regarded federal interpretations of the Sherman and Clayton Acts as dispositive in interpreting the Arizona Antitrust Act." In support, they cite three cases extolling the importance of following federal interpretation. Their statement is correct, but incomplete. What is omitted are the holdings of the cases. In each case, the Arizona court followed federal law in determining the standard of conduct required by antitrust law. *See All Am. Sch. Supply Co. v. Slavens*, 128 Ariz. 261, 262, 625 P.2d 324, 325 (1981) (relying on federal cases to judge whether the defendant's conduct violated the antitrust law); *Pasco Indus., Inc. v. Talco Recycling, Inc.*, 195 Ariz. 50, 57, ¶ 25, 985 P.2d 535, 542 (App. 1998) (looking to federal law for the standard to determine whether an antitrust defendant possessed monopoly powers); *Wedgewood Inv. Corp. v. Int'l Harvester Co.*, 126 Ariz. 157, 160, 613 P.2d 620, 623 (App. 1979) (looking to federal law for guidance on the type of

conduct that would violate antitrust law).  In none of the cases did Arizona courts look to the federal courts for guidance on the threshold issue of who may bring a state-law-based claim in a state court.

¶23	In a further attempt to persuade this court to follow *Illinois Brick*, the Defendants point out that most of the states allowing indirect purchaser actions have done so by *Illinois Brick* repealer statutes.  They suggest that to now allow indirect purchaser suits would involve the court in "judicial activism." However, we do not view our rejection of *Illinois Brick* as judicial activism because the legislature granted the right of action to indirect purchasers in § 44-1408.  We simply reject the judicial interpretation of the parallel federal act that would prohibit suits by indirect purchasers despite the statutory language granting such a right of action.

¶24	The Arizona statute broadly grants a right of action to any "person" injured in business or property by the anti-competitive acts of another.  A.R.S. § 44-1408(B).  The Plaintiffs certainly fall within the definition of persons.  The complaints, which must be taken as true for purposes of a motion to dismiss, *Donnelly Constr. Co. v. Oberg/Hunt/Gilleland*, 139 Ariz. 184, 186, 677 P.2d 1292, 1294 (1984), allege that the Defendants' illegal activity injured them in their business or property.  So why do the Plaintiffs not have a right of action according to Defendants?

Because the Supreme Court in *Illinois Brick* judicially limited the comparable federal statute. In the absence of the federal guidance clause, Arizona's statutory language would plainly include indirect purchasers. Viewed against this background, *Illinois Brick* repealer statutes do not expand the right-of-action statutes, they simply reject a judicially imposed limitation on the right to sue originally granted by statute. By refusing to construe the federal guidance clause as requiring that Arizona courts follow *Illinois Brick*'s limitation on the scope of the right of action granted by the legislature, the court is simply choosing to follow the expressed legislative intent that persons injured in their business or property by anti-competitive activity have a right of action. The court defers to the legislature, not the federal courts, to create exceptions to the rule.

¶25    The Defendants also use the *Illinois Brick* repealer statutes as the standard for uniformity, asserting that uniformity mandates that the court leave it to the legislature to depart from federal law. This argument elevates form over substance. The law in most of the states that have considered the issue provides that indirect purchasers may bring a private action. The importance of uniformity lies in the rule of law, not in how that law came into effect.

¶26    The question remains whether any sound reasons justify following *Illinois Brick* and limiting the range of plaintiffs who

may sue to remedy state antitrust violations. We find none compelling.

¶27    A principal reason motivating the Supreme Court to disallow indirect purchaser suits was the complexity of proof of damages in such cases. *Ill. Brick*, 431 U.S. at 737, 97 S. Ct. at 2070 (noting problems of proof and apportionment between direct and indirect purchasers). The Court reasoned that indirect purchasers would attempt to prove damages by showing that the direct purchaser passed-on overcharges from the manufacturer. *Id.* The Court had previously disallowed a pass-on defense in *Hanover Shoe, Inc. v. United Shoe Machinery Corp.*, 392 U.S. 481, 494, 88 S. Ct. 2224, 2232 (1968), decided just nine years before *Illinois Brick*. *See Ill. Brick*, 431 U.S. at 730, 97 S. Ct. at 2067 (explaining that "allowing offensive but not defensive use of pass-on would create a serious risk of multiple liability for defendants"). The Court believed that to allow indirect purchaser actions, it would have to overrule *Hanover Shoe*, a path the Supreme Court was unwilling to take. *Id.* at 736-37, 97 S. Ct. at 2070. This court is under no such constraint.

¶28    In *Illinois Brick*, the Court determined that use of pass-on evidence by indirect purchasers against defendants who could not present that same evidence in their defense against direct purchasers created a risk of multiple liability, increased the complexity of proving damages, and undercut direct purchasers'

-23-

incentive to bring antitrust actions.  *Id*. at 745, 97 S. Ct. at 2074.  The Defendants in these cases assert all these reasons to convince the court to follow *Illinois Brick*.

¶29     Defendants maintain that, as the Supreme Court did in *Illinois Brick*, the Arizona Court of Appeals also precluded a defendant from employing a pass-on defense to a suit by an indirect purchaser of liquid petroleum gas.  *N. Ariz. Gas Serv., Inc. v. Petrolane Transp., Inc.*, 145 Ariz. 467, 702 P.2d 696 (App. 1984).  *Petrolane*, however, was a contract action for alleged overcharges, not an antitrust action.  *Id.* at 470, 702 P.2d at 699.  Because the ultimate consumers of the gas lacked privity to the supply contract, the court held that they could not sue to recover the overcharges.  *Id.* at 476, 702 P.2d at 705.  The court of appeals precluded Petrolane from using a pass-on defense because that defense would have prevented the only party who could recover the overcharges, Northern Arizona Gas, from doing so.  *Id.*  ("If Petrolane were permitted to assert this [pass-on] defense . . . , it would be able to retain its overcharges with impunity.").  The cases today present a different scenario from that presented in *Petrolane*.  In these antitrust cases, the ultimate consumers need no privity and may bring suit for damages.

¶30     The risk of multiple liability for Defendants – that is, being subject to a direct purchaser action and also an indirect purchaser state case – is a legitimate and important concern.  It

-24-

is not, however, a problem that our trial courts are incompetent to handle. Indeed, most of the *Illinois Brick* repealer statutes leave the solution to the double-recovery problem to the courts. *E.g.*, 740 Ill. Comp. Stat. 10/7(2) ("[I]n any case in which claims are asserted against a defendant by both direct and indirect purchasers, the court shall take all steps necessary to avoid duplicate liability for the same injury including transfer and consolidation of all actions."); N.M. Stat. Ann. § 57-1-3(C) ("In any action under this section, any defendant, as a partial or complete defense against a damage claim, may, in order to avoid duplicative liability, be entitled to prove that the plaintiff purchaser or seller in the chain of manufacture, production, or distribution who paid any overcharge or received any underpayment, passed on all or any part of such overcharge or underpayment to another purchaser or seller in such chain."); S.D. Codified Laws § 37-1-33 (In any subsequent action for the same conduct, "the court may take any steps necessary to avoid duplicative recovery.").

¶31     The complexity of proving damages through multiple levels of sales is a daunting task, but one to which our courts are equal. The plaintiffs bear the burden of proving the damages caused by a defendant's wrongful conduct. If the plaintiffs cannot present admissible and convincing proof, they cannot recover. For the purposes of these cases, in which we are compelled to accept the

allegations of the complaints as true, *see Donnelly Constr. Co.*, 139 Ariz. at 186, 677 P.2d at 1294, we assume that these Plaintiffs can present sufficient evidence of injury caused by illegal conduct.  Unlike the Supreme Court, we are unwilling to foreclose their opportunity to attempt to prove their injury.

¶**32**　　　　The Defendants have correctly pointed out that in other contexts Arizona courts have found damages to be too speculative or too tenuously connected to the alleged wrongdoing to be recoverable.  However, we cannot say, based on the state of this record, that damages to indirect purchasers are too speculative because they are difficult to measure and prove.  *See* Edmund H. Mantell, *Denial of a Forum to Indirect-Purchaser Victims of Price Fixing Conspiracies:  A Legal and Economic Analysis of* Illinois Brick*,* 2 Pace L. Rev. 153, 204-10 (1982) (presenting a formula for calculating damages and arguing that the suggested difficulties for such calculations are exaggerated); Robert G. Harris & Lawrence A. Sullivan, *Passing on the Monopoly Overcharge:  A Comprehensive Policy Analysis,* 128 U. Pa. L. Rev. 269, 315 (1979) (suggesting that "reasonable estimation of passing on which will closely approximate the truth in the majority of cases requires no mystical powers or elaborate, extensive economic analysis").  Commenting on another form of antitrust treble damages claims, the Supreme Court has acknowledged that reasonable estimates of damages may suffice:

> [E]ven where the defendant by his own wrong
> has prevented a more precise computation, the

jury may not render a verdict based on speculation or guesswork. But the jury may make a just and reasonable estimate of the damage based on relevant data, and render its verdict accordingly. In such circumstances "juries are allowed to act on probable and inferential as well as [upon] direct and positive proof." [Citations omitted.] Any other rule would enable the wrongdoer to profit by his wrongdoing at the expense of his victim. It would be an inducement to make wrongdoing so effective and complete in every case as to preclude any recovery, by rendering the measure of damages uncertain.

*Bigelow v. RKO Radio Pictures*, 327 U.S. 251, 264, 66 S. Ct. 574, 579-80 (1946) (alteration in original).

¶33      In the years that have passed since the *Illinois Brick* decision, experience has shown that the courts can manage the complexity of indirect purchaser recovery in antitrust cases. Defendants raise the concern regarding the difficulty of the proof of damages, but fail to provide examples of cases of unresolvable complexity. Our research has similarly revealed none. In contrast, recent developments in multistate litigation show that plaintiffs may be able to produce satisfactory proof of damages. *Cf. In re S.D. Microsoft Antitrust Litig.*, 657 N.W.2d 668, 679 (S.D. 2003) (noting that seven of nine courts reviewing the issue in that case upheld class certification of indirect purchaser plaintiffs based on their proffered testimony regarding proof of pass-on damages). We think our courts can resolve the complex damages issues that may arise.

*Response to the Dissent*

¶34    Our dissenting colleague urges that we must follow *Illinois Brick* to ensure uniformity.  On that point, we note that the legislature's "general purpose" was to make uniform the law *among the states that adopted the Uniform Act*.  A.R.S. § 44-1412. But only if we allow indirect purchaser suits to proceed will there be such uniformity, for two of the three other uniform act jurisdictions allow indirect purchaser suits by *Illinois Brick* repealer statutes, *see* Mich. Comp. Laws § 445.778(2); N.D. Cent. Code § 51-08.1-08, and one by modification of the act to allow the state to bring such suits on behalf of its citizens.  *See* Del. Code Ann. tit. 6, § 2108(b).  *See supra* ¶ 14.  By allowing indirect purchaser suits in Arizona, we now make the law  "uniform" among the four states that have enacted the Uniform Act.

¶35    There is, however, no uniformity whatsoever between the governing law of the four "Uniform Act" jurisdictions and the federal law.  Despite language in the Uniform Act suggesting allegiance to federal law, all four uniform act states permit indirect purchasers to sue, rejecting the federal rule prohibiting such suits.  Thus, there is no uniformity between the four Uniform Act states and the federal law on this point, although the Uniform Act, according to the dissent "clearly" requires such uniformity.

¶36    The dissent also urges following the federal law absent compelling reasons not to do so.  We believe, however, that the

guidance of the framers of Arizona's Constitution provides sufficient reason to depart from the federal path. The framers, keenly aware of the harmful effects of monopoly power, enjoined the legislature to enact laws to protect Arizona citizens from anti-competitive practices such as price fixing and manipulating supply and demand. Ariz. Const. art. 14, § 15. In providing that a "person . . . injured . . . by [an antitrust violation] may bring an action for . . . damages sustained," *see* A.R.S. § 44-1412, the legislature has fulfilled that constitutional command. The legislative protection from antitrust injury can only be fully enjoyed, however, if Arizona citizens, whether direct or indirect purchasers of goods, may sue to enforce that right.

¶37    The concerns that motivate the federal government at times differ from those that motivate state legislatures. While the Supreme Court may have wished to protect federal courts from the burden of resolving nationwide class actions potentially involving hundreds of thousands of indirect purchaser plaintiffs, this court is confident that Arizona's courts are up to the task of ascertaining damages and protecting Arizona citizens.[9]

---

[9]    The Supreme Court also reasoned that antitrust suits were more apt to be brought if damages were concentrated in direct purchasers. *Illinois Brick*, 431 U.S. at 745-46, 97 S. Ct. at 2074. We are not convinced that this is so. An auto dealer who relies on the manufacturer for delivery of popular models of cars does not strike us as likely to sour the relationship with the manufacturer by suing over a price increase, especially if it can pass along overcharges to purchasers. In such a case, the indirect purchaser is the truly injured party, and likely the only party with impetus

¶38     Our dissenting colleague also disagrees that whether indirect purchasers can sue is an issue of standing, and argues that whether plaintiffs have suffered an antitrust injury is an issue of substantive law.  The fact is, however, that we cannot know whether Plaintiffs have suffered such an injury, as they were barred at the courthouse door from attempting to show how and whether they have been injured by Defendants' allegedly anti-competitive activity.  This makes the issue one akin to standing, not one of substantive antitrust law.  *See* supra n.8.

¶39     Regarding the dissent's iteration of the Supreme Court's comments on standing, we urge caution.  The Court observed that the question "which persons have been injured by an illegal overcharge" differs from the question "which persons have sustained injuries too remote to give them standing to sue for damages under § 4." *Illinois Brick*, 431 U.S. at 728 n.7.  And we agree that this is true.  In federal court, a plaintiff must be able to prove actual or threatened injury that is not remote.  *See Lewis v. Casey*, 518 U.S. 343, 349-50, 116 S. Ct. 2174, 2179 (1996) (analyzing actual injury in § 1983 context); *Warth v. Seldin*, 422 U.S. 490, 498-501, 95 S. Ct. 2197, 2205-06 (1975) (zoning).  But rather than wrestle with the difficulty of ascertaining damages on a case-by-case basis, the Supreme Court has chosen to draw a bright line barring all potentially injured indirect purchaser plaintiffs from

to sue to redress the antitrust injury.

attempting to prove that they suffered antitrust injuries. That is a choice that the Supreme Court is free to make on behalf of the federal courts. We choose to follow the command of our constitution and afford greater protection to Arizona citizens by allowing them to attempt to prove their cases under Arizona law in Arizona courts.

¶40    The fears expressed by the Supreme Court in *Illinois Brick* and those arguing for extension of that rule to the states are not new to us. We do not minimize the difficulties of ascertaining damages, but as this court has stated before in another context: "We acknowledge that the system will not handle each case perfectly, but we think it better to adopt a rule which will permit courts to attempt to achieve justice in all cases than to continue to rely on one which guarantees injustice in many cases." *Brannigan v. Raybuck*, 136 Ariz. 513, 519, 667 P.2d 213, 219 (1983) (discussing difficulties in ascertaining causation). Allowing the courts to attempt to achieve justice in the antitrust realm comports with the longstanding policy of this state to protect consumers and deter anti-competitive behavior. *See* Ariz. Const. art. 14, § 15.

**CONCLUSION**

¶41     The court of appeals' decisions are affirmed.  The cases are remanded for proceedings consistent with this opinion.

_____
                                Rebecca White Berch, Justice

CONCURRING:

_____
Charles E. Jones, Chief Justice

_____
Michael D. Ryan, Justice

_____
Wallace R. Hoggatt, Judge*

*Pursuant to Article 6, Section 3 of the Arizona Constitution, the Honorable Wallace R. Hoggatt, Judge of the Cochise County Superior Court, was designated to sit on this case.

**M c G R E G O R**, Vice Chief Justice, dissenting

¶42     I respectfully dissent.  I depart from the majority opinion on two central points.  First, I would follow the legislature's expressed intent in adopting the Arizona Antitrust Act and interpret Arizona Revised Statutes (A.R.S.) section 44-1408.B consistently with comparable federal law.  Second, I disagree with the majority's characterization of the question whether the plaintiffs can bring their actions as involving simply

-32-

a procedural question of standing.  I regard the question as one of substantive law: Did the plaintiffs suffer an antitrust injury as defined by the Arizona Antitrust Act?  I believe they did not.

### A.

¶43      When we construe a statute, our goal is to interpret it in a manner that effectuates the legislature's intent in adopting the statute.  *Hohokam Irrigation & Drainage Dist. v. Ariz. Pub. Serv. Co.*, 204 Ariz. 394, 398 ¶ 15, 64 P.3d 836, 840 (2003). Often, deciphering legislative intent presents a considerable challenge.  In this instance, however, the legislature made our task of discerning its goal simpler by including an express statement of intent.  When the Arizona Legislature adopted the Arizona Antitrust Act, it could scarcely have more clearly announced that it valued uniformity in antitrust law, both among states and between state and federal governments.  The legislature revealed its preference for uniformity first by patterning its legislation after the Uniform State Antitrust Act, 7C U.L.A. 351 (2000) (Uniform Act).  The drafters of section 8 of the Uniform Act, which Arizona codified at A.R.S. section 44-1408.B, intended to adopt "[t]he private right of action for injury to business or property by reason of a violation of the Act found in section 4 of the Clayton Act . . . ."  Unif. State Antitrust Act § 8 cmt., 7C U.L.A. 366 (2000).  The drafters of the Uniform Act further emphasized the importance of uniformity between federal and state

antitrust law by stating that "[s]ince the [Uniform] Act parallels the federal antitrust structure in its basic prohibitions, the following of federal antitrust precedent should be encouraged." *Id.* at 352. Hence, Arizona's decision to adopt the Uniform Act, in itself, revealed an intent that Arizona develop a body of antitrust law consistent with federal precedent.

¶44 But the legislature did not stop with that step. To emphasize the importance the legislature placed upon uniformity, and presumably to make certain that the courts understood the legislative intent to achieve uniformity, the legislature adopted section 44-1412, which states:

> This article shall be applied and construed to effectuate its general purpose to make uniform the law with respect to the subject of this article among those states that enact it. It is the intent of the legislature that in construing this article, the courts may use as a guide interpretations given by the federal courts to comparable federal antitrust statutes.

¶45 The first sentence of section 44-1412 establishes a goal of uniformity among those states that adopted the Uniform Act. That goal proved impossible to meet. Since its publication in 1973, only three other states have adopted the Uniform Act: Delaware, Michigan and North Dakota. While these three jurisdictions are referred to as "Uniform Act states", none of them adhere to the original Uniform Act civil cause of action language. Delaware substantially amended the section and allows only the state to bring an action for anti-competitive conduct. Del. Code

Ann. tit. 6, § 2108(b) (1999). The legislatures in both Michigan and North Dakota enacted so-called *Illinois Brick* repealer statutes that broadened the scope of antitrust injury to include indirect purchasers. Mich. Comp. Laws § 445.778(2) (2001); N.D. Cent. Code § 51-08.1-08(3) (1999). Because so few states adopted the Uniform Act and even those that did modified it, the legislature's goal of uniformity became impossible to meet by looking to other Uniform Act jurisdictions.

¶46      The legislature, however, enhanced Arizona's opportunity to achieve uniformity in the field of antitrust law by adding a federal guidance clause as the second sentence to A.R.S. section 44-1412. The majority discounts the importance of the guidance clause, largely relying upon the fact that the legislature used permissive rather than mandatory language. Op. ¶ 9. I think the legislative language deserves greater deference: I regard the clause as directive language that we should follow absent compelling arguments to the contrary. The majority's approach, which rejects federal law, gives no deference to the legislature's direction and thus deprives the guidance clause of effect. Quite obviously, this court can look to federal law for guidance without obtaining permission from the legislature. *See, e.g.*, *Higdon v. Evergreen Int'l Airlines, Inc.*, 138 Ariz. 163, 165 n.3, 166, 673 P.2d 907, 909 n.3, 910 (1983) (applying a federal court interpretation of a Title VII exemption to construe a similar

provision in the Arizona Civil Rights Act and the Equal Pay Act); *Beaman v. Westward Ho Hotel Co.*, 89 Ariz. 1, 5-6, 357 P.2d 327, 329-30 (1960) (applying a federal court interpretation defining "wages" under the Federal Unemployment Tax Act to define the same term under Arizona law).  When the legislature added the guidance clause, therefore, it must have meant something more.  I understand the "something more" to involve an expression of the legislature's preference for uniformity, and therefore predictability, in the area of antitrust law.

**¶47**      Were we to follow the guidance clause and look to federal law for guidance in this instance, the plaintiffs could not proceed; federal law clearly bars their claims.  The federal courts have interpreted a comparable federal antitrust statute.  The language of section 44-1408.B is almost identical to its federal counterpart, section 4 of the Clayton Act.  Section 4 provides, as does section 44-1408, that "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States . . . ."  15 U.S.C. § 15(a) (2000).  In *Illinois Brick Co. v. Illinois*, the Supreme Court held that, for purposes of section 4 of the Clayton Act, an indirect purchaser of goods *is not a person injured* by a manufacturer's anti-competitive conduct, even though that conduct leads to goods being purchased by the indirect purchaser at a higher price than would exist but for the antitrust

violation.  431 U.S. 720, 729 (1977).  "[T]he overcharged direct purchaser, *and not others in the chain of manufacture or distribution*, is the party 'injured in his business or property.'" *Id.* (emphasis added).

¶48     In this instance, then, we can fulfill the legislature's desire for a uniform approach in cases involving alleged antitrust injury by drawing from the federal experience.  Instead, the majority has adopted an approach that ensures non-uniformity between state and federal law, without defining any compelling reason for doing so.

¶49     The majority does not explain why we should now depart from our prior practice of interpreting Arizona's antitrust statutes consistently with comparable federal statutes.  *See All Am. Sch. Supply Co. v. Slavens*, 128 Ariz. 261, 262, 625 P.2d 324-25 (1981) (adopting federal courts' interpretation of antitrust violation and describing federal decisions as dispositive); *Pasco Indus., Inc. v. Talco Recycling, Inc.*, 195 Ariz. 50, 57 ¶ 25, 985 P.2d 535, 542 (App. 1998) (adopting a federal court interpretation of "monopoly power" as used in section 2 of the Sherman Act); *Wedgewood Inv. Corp. v. Int'l Harvester Co.*, 126 Ariz. 157, 160, 613 P.2d 620, 623 (App. 1979) ("The Arizona legislature clearly intended to strive for uniformity between federal and state antitrust laws.").  Indeed, today's decision becomes the first Arizona Antitrust Act case in which we do not look to federal law

to resolve a question of the appropriate interpretation of a state antitrust statute.

¶50　　　The impact of today's departure from our long-standing practice remains unclear.  Apparently we now will interpret some provisions of the Arizona Antitrust Act consistently with federal law and, in other instances, disregard federal law, as we do today. The majority does not tell businesses, litigants, or courts how to discern which rule applies to any particular antitrust issue, a result that creates unnecessary and harmful uncertainty.[10]

¶51　　　The majority relies, in part, on the Supreme Court's decision in *California v. ARC America Corp.*, 490 U.S. 93 (1989), to justify its decision to ignore the federal guidance clause.  Op. ¶ 21.  In that case, the Court held that federal antitrust law and *Illinois Brick* do not preempt state antitrust law.  *Id.* at 106. Accordingly, a state can permit indirect purchaser suits without concern for federal antitrust policy.[11]  *ARC America*, however, does

---

[10]　　The majority also concludes that, if the federal guidance clause signals that the legislature intended that we follow federal law at all, it could only have intended to follow the law as it existed when Arizona adopted the Arizona Antitrust Act.  Op. ¶ 11. I discern no basis for concluding that the legislature intended to adopt an antitrust law frozen in time as of 1974.  I think it more likely that the legislature intended that the federal guidance clause act as a fluid provision to keep Arizona law consistent with developing federal antitrust law.

[11]　　The Court pointed out that Arizona's statutory cause of action "generally follows" mirrored section 4 of the Clayton Act and that the language could be construed as either permitting or prohibiting indirect purchaser suits.  *ARC America*, 490 U.S. at 98 n.3.

not address the question at issue. I agree that a state *can* decide to permit indirect purchaser actions even though federal law does not. The question for us is whether the Arizona Legislature *intended* to permit actions not allowed under comparable federal antitrust law. *ARC America*, therefore, provides no guidance in this action.

**B.**

¶52 My second area of disagreement with today's opinion results from the majority's decision to characterize the issue whether an indirect purchaser can bring an action under section 44-1408.B as raising simply a question of standing. Op. ¶¶ 17-22. According to the majority, the federal guidance clause distinguishes between substantive and procedural matters of federal law, and indicates only that the legislature prefers uniformity among the former but not among the latter. *Id.* ¶ 20. Leaving aside the question whether the legislature intended to make any such distinction, I disagree that the legal issue before us is whether section 44-1408.B confers "standing" to sue upon an indirect purchaser. The question, rather, is whether an indirect purchaser has suffered an antitrust injury for the purposes of section 44-1408.B. That issue presents a question of substantive law.

¶53 In *Illinois Brick*, the Supreme Court explicitly described the distinction between those questions that the majority fails to

recognize: "[T]he question of which persons have been injured by an illegal overcharge for purposes of § 4 [of the Clayton Act] is analytically distinct from the question of which persons have sustained injuries too remote to give them standing to sue for damages under § 4."[12]  431 U.S. at 728 n.7.  The central question for us, which the Court answered in *Illinois Brick*, is not whether the plaintiffs have "standing," but whether they suffered an injury contemplated by antitrust law.  *See Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 535 n.31, 545 (1983) (holding that a labor union could not pursue an antitrust claim against the association defendant because it did not suffer an antitrust injury under section 4 of the Clayton Act).  Therefore, even if, as the majority avers, the guidance clause reflects a legislative intent to develop Arizona's substantive antitrust law in a manner consistent with federal law, we should conclude that these indirect purchaser actions cannot proceed because the plaintiffs did not suffer an antitrust injury under the Arizona Antitrust Act.

---

[12]    The Court reaffirmed this principle in *Blue Shield of Va. v. McCready*, in which the Court proceeded with a standing analysis only after holding that a health care plan subscriber suffered an antitrust injury at the hands of her insurance company.  457 U.S. 465, 483-84 (1982) (holding that insurer's practice of reimbursing members for psychiatrist treatment but not psychologist treatment constituted an antitrust violation in which members were directly injured because they were unable to obtain their treatment of choice).

## C.

¶**54**     The majority further justifies its decision to depart from our past practice of following federal antitrust law by concluding that permitting indirect purchaser actions furthers sound public policy.  The majority may be right, but that decision is one that should be made by the legislature, rather than by this court.  As the majority notes, twenty-three of the twenty-five states that opted to permit indirect purchaser actions did so by enacting statutes, *see* Op. ¶ 15 n.4, presumably after legislative debate and hearings.  As a result of their deliberations, some of those states limited the circumstances under which indirect purchaser actions may proceed.  For instance, not all states permit private party actions; several permit only the state to bring an action on behalf of indirect purchasers.  *Id.*  Today, without public hearings or debate, Arizona joins the tiny minority of states that have judicially interpreted antitrust statutes similar to section 44-1408.B as permitting indirect purchaser actions, thereby foreclosing consideration as to the parameters of indirect purchaser actions.

¶**55**     Nearly three decades have passed since the *Illinois Brick* decision.  During all those years, the legislature took no action to expand the scope of section 44-1408.B to permit indirect purchaser actions or to indicate that this court should ignore its federal guidance clause.  I fully concur with the majority that the

-41-

question decided here involves important questions of public policy. I would leave this matter of public policy to the legislature.


_____
Ruth V. McGregor, Vice Chief Justice